873 P.2d 51

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Henry H. FURUTANI, Defendant–Appellee,**

and

**Rachel R. Furutani, Defendant.**

No. 15557.

Supreme Court of Hawai'i.

April 27, 1994.

Edwin L. Baker and Lawrence A. Goya, Deputy Attys. Gen., on the briefs, Honolulu, for plaintiff-appellant State of Hawai'i.

William H. Feldhacker, on the briefs, Kalaheo, Kaua'i, for defendant-appellee Henry H. Furutani.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

The plaintiff-appellant State of Hawai'i (hereafter State or prosecution) appeals the August 7, 1991 findings of fact (FOFs), conclusions of law (COLs), and order of the Fifth Circuit Court (circuit court) granting the defendant-appellee Henry H. Furutani's motion for new trial pursuant to Rule 33 of the Hawai'i Rules of Penal Procedure (HRPP).[1]

The State urges that the circuit court committed the following reversible errors in granting Furutani's motion for new trial: (1) finding that defense counsel had obtained an express affirmative commitment from the jurors—by way of a collective "response" to an inquiry posed during voir dire—that they would not hold Furutani's failure to testify or otherwise present evidence in his own behalf against him; (2) finding that, despite the opportunity afforded at voir dire to reveal bias or prejudice against a defendant who failed to testify or present evidence of innocence, there was an appearance that one or more jurors "may have harbored such a bias and prejudice ... and indicated the contrary"; (3) finding that one or more jurors committed misconduct during jury deliberations by mentioning and discussing Furutani's failure to testify and present evidence of his innocence in spite of the circuit court's instruction that they were not to do so; (4) finding that Furutani was prejudiced by the misconduct; (5) finding that "it would be speculation" for the circuit court to find that the prejudice had been cured by "reminders" of other jurors during deliberations that it was improper to discuss or consider Furutani's failure; and (6) concluding that "the

---

1. HRPP 33 (1981) provides in relevant part that "[t]he court on motion of a defendant may grant a new trial to [the defendant] if required in the interest of justice."

possible misconduct at voir dire and the misconduct during deliberations deprived [Furutani] of a trial by twelve fair and impartial jurors."

Although we hold that those portions of the circuit court's FOFs finding that the jurors "responded" during voir dire that they would not hold Furutani's failure to testify or otherwise present evidence in his own behalf against him, thereby making a "commitment" to that effect, are clearly erroneous, we nonetheless affirm the circuit court's order granting Furutani's motion for new trial.

## I. BACKGROUND

On June 27, 1990, a Kaua'i County (Fifth Circuit) grand jury returned an indictment (Cr. No. 90-0092) charging Furutani with two counts of theft in the first degree (Counts I and II)[2] in violation of Hawai'i Revised Statutes (HRS) § 708–830.5 (Supp. 1990),[3] two counts of "ownership/operation of business by certain persons prohibited" (Counts III and V) in violation of HRS § 842–2(1) (1985), one count of theft in the second degree (Count IV) in violation of HRS § 708–831(1)(b) (Supp.1990),[4] one count of forgery in the second degree (Count VI) in violation of HRS § 708–852 (Supp.1992), three counts of failure to report income (Counts VII, VIII, and IX) in violation of HRS § 842–11 (1985),[5] and three counts of "false return" (Counts X, XI, and XII) in violation of HRS § 231–34 (1985).[6] A second indictment (Cr. No. 91–0059), dated April 15, 1991, charged Furutani with an additional count of theft in the first degree. The two cases were consolidated on May 13, 1991. Thereafter, the charge set forth in Cr. No. 91–0059 was denominated Count II of the nine surviving charges against Furutani.

Trial commenced on May 13, 1991, the first order of business being jury selection. During his voir dire on May 14, 1991, Furutani's attorney (defense counsel) directed the following remarks to the jury venire:

> One of the other rules, in law, is the fact that in criminal law, a defendant is not required to testify. He's not required to present any evidence whatsoever, and he has the right to completely rely on the State meeting a burden of proof, beyond a reasonable doubt in any case.
>
> . . . .
>
> Would someone on the jury panel who—can you see the comparison I'm trying to bring out here? That in a courtroom setting you cannot take anything from the fact of someone remaining silent. Do you all feel that's fair? Do you all feel that you can bring that into the courtroom, that kind of feeling as a member of the jury?
>
> Okay. Thank you.

The videotaped record of the proceedings fails to reflect any discernible response from any member of the jury panel.

A jury of twelve members, plus three alternates, was ultimately selected after the exercise of three peremptory challenges each by the prosecution and defense counsel.

During its case in chief, the prosecution elicited the testimony of thirty-nine witnesses and placed seventy-two exhibits in evidence. (Twenty-four defense exhibits were also received in evidence in the course of the prosecution's case.) By contrast, Furutani exercised his constitutional right not to testify; in addition, he did not call any witnesses in his own behalf. As a result, at the close of all the evidence, the circuit court instructed the jury, by agreement of the parties, that "[Furutani] does not have any burden or duty to call any witnesses or produce any evidence,

**2.** Count II was dismissed without prejudice on May 6, 1991.

**3.** By virtue of Act 289, § 1, 1992 Haw.Sess.Laws 745, the state legislature amended HRS § 708–830.5, effective June 29, 1992. The amendments to the statute are immaterial to the present appeal.

**4.** The state legislature amended HRS § 708–831 in 1992. Act 289, § 2, 1992 Haw.Sess.Laws 745. These amendments are likewise immaterial to the present appeal.

**5.** The defendant Rachel R. Furutani was also charged in Count IX. Judgment of acquittal was entered in her favor on October 31, 1990.

**6.** On April 26, 1991, Furutani attempted to enter pleas of no contest to Counts X, XI, and XII. The circuit court then granted the State's motion to *nolle prosequi* all three counts. Rachel R. Furutani had been charged in Count XII. The dismissal of that count removed her from the case as a defendant.

and *you must not draw any inference unfavorable to [Furutani] because he did not testify in this case, or give any consideration to this fact in your deliberation.*" Court's Instruction No. 12a. (Emphasis added.)

On June 7, 1991, the twelfth day of trial, Furutani was found guilty as charged as to Counts I, III, and V through IX. The jury also convicted Furutani of the included offense of theft in the second degree as to Count II and acquitted him of the charge in Count IV.

Several hours after the verdicts were returned, a juror (complaining juror) contacted the circuit court and defense counsel to announce that she had changed her mind about the verdict. She told the circuit court that she had voted to convict only because she was pressured to do so by other jurors who wanted to go home for the weekend.[7] Later the same day, she also represented to defense counsel that she had voted to convict on the counts as to which Furutani's signatures on checks and tax returns were material only because another juror had opined during deliberations that if the signatures were not Furutani's, he would have taken the stand and said so.

In light of the complaining juror's expressed desire to change her vote, the prosecution retained a private investigator to contact the foreperson of the jury; a telephone interview was conducted on June 12, 1991 regarding the events related by the complaining juror.[8]

Having been informed that, during deliberations, one or more jurors may have improperly considered Furutani's failure to testify or present evidence in his own behalf, the circuit court, on June 17, 1991, conducted an evidentiary hearing to determine whether any such statements were made. All twelve jurors were initially examined by the circuit court, which then accorded both counsel the opportunity to question them as well.

The record reflects that eight of the twelve jurors recalled that general comments were made in the course of deliberations regarding Furutani's failure to testify in his own behalf. The foreperson testified that these comments prompted her to request that the circuit court reread certain jury instructions to the panel and that the court complied with the request. At least one juror testified that such comments emanated from more than one of the panel members, and another stat-

---

7. Interestingly, this claim was never explored further by the circuit court, the prosecuting attorney, or defense counsel.

8. By order dated December 6, 1993, this court adopted the Hawai'i Rules of Professional Conduct (HRPC), which became effective on January 1, 1994 and replaced the Code of Professional Responsibility (1970 and as amended) (CPR) as Exhibit A appended to the Rules of the Supreme Court.

DR 7–108(A) of the CPR provided in relevant part that *"[b]efore* the trial of a case a lawyer … shall not communicate with … anyone [the lawyer] knows to be a member of the [jury] venire.…*"* (Emphasis added.) DR 7–108(B) of the CPR provided in relevant part that *during* the trial of a case a lawyer "shall not communicate with … any member of the jury."

HRPC 3.5 provides in relevant part:

**IMPARTIALITY AND DECORUM OF THE TRIBUNAL.**

A lawyer shall not:

(a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law; [or]

(b) *communicate ex parte with such a person* except as permitted by law[.]

HRPC 3.5(a) and (b) (1994). HRPC 8.4 provides in relevant part:

**MISCONDUCT.**

It is professional misconduct for a lawyer to:

(a) violate … the [HRPC], knowingly assist or induce another to do so, or do so *through the acts of another* [.]

HRPC 8.4(a) (1994) (emphasis added).

Although DR 7–108(A) and (B) did not prohibit the kind of post-trial *ex parte* communication with a juror involved in the present matter, it is clear that HRPC 3.5(b) and 8.4(a) do. Subsequent to January 1, 1994, all post-trial communications between attorneys and jurors, relating to the subject matter of the trial, must be in the presence of all parties to the proceeding or their legal representatives.

This does not mean, however, that HRPC 3.5(b) and 8.4(a) would necessarily preclude the discovery of the kind of juror misconduct involved in this appeal. Rather than being subjected to an *ex parte* interview in the first instance, a juror could be simultaneously contacted by all parties on an informal basis, or, as in the present case, the juror could be questioned on the record in open court.

As an aside, we acknowledge our awareness of the legitimate collateral benefits—to attorneys, judges, and jurors alike—that accrue from post-trial jury "debriefings." Assuming that they do not occur *ex parte* or otherwise violate the HRPC, such "debriefings" are not prohibited.

ed that they were made on the first and third days of deliberations. The foreperson testified that "everybody had it in their mind because after we got through everybody said, yeah[,] we thought about it. . . ." The complaining juror testified that "one of the exact statements was . . . 'He [*i.e.*, Furutani] didn't go up there and say that he wasn't guilty so he's guilty.'" Another juror recalled that a member of the panel wondered aloud, "[W]hy didn't he testify and . . . try to prove himself innocent?" An additional juror remembered the sentiment being expressed that, because Furutani did not testify in his own behalf, he was hiding something.

The record further reflects that nine jurors specifically recalled the observation being made that if various signatures purporting to be Furutani's were not in fact his, Furutani would have taken the stand and said so. According to one juror, the comment was made *after* the circuit court reread the relevant instructions.

Moreover, nine jurors recalled comments from one or more of their fellows that defense counsel should have presented affirmative evidence of Furutani's innocence. One juror remembered the following statement: "[H]ow come he didn't have anybody to testify for him if he was innocent[?]"

Finally, the record reveals that nine jurors testified that the respective views set forth above were generally met with admonitions by fellow jurors that such considerations should be put aside, in accordance with the circuit court's instructions.

With leave of the circuit court, Furutani timely filed a written motion for new trial on July 1, 1991. On August 7, 1991, the circuit court entered its FOFs, COLs, and order granting Furutani's motion. The FOFs provided in relevant part:

The Court finds as follows:

1. That counsel for [Furutani] did, during voir dire, obtain a commitment from the jurors that they would not hold [Furutani's] failure to testify or to present evidence in his own behalf against him;

2. That during voir dire, the jurors responded "Yes" when asked by defense counsel if they thought it was fair that a defendant did not have to testify or present evidence, and that it could not be considered against the defendant, and that they would bring that kind of feeling into the courtroom;

3. That the jury was properly instructed by the Court as to these issues, specifically, but not limited to Court's Instruction [No.] 12a. . . .

4. That despite the voir dire and the Court's instructions, one or more members of the jury did discuss [Furutani's] failure to testify and his failure to present evidence of his innocence;

5. That although the jurors were given an opportunity during voir dire to reveal their bias or prejudice against a defendant who failed to testify or present evidence of his innocence, it appears that one or more members of the jury may have harbored such a bias and prejudice at voir dire and indicated the contrary;

6. That one or more members of the jury, by mentioning and discussing [Furutani's] failure to testify and his failure to present evidence of his innocence contrary to the Court's instructions, did commit misconduct;

7. That although some members of the jury reminded the other members that it was improper to discuss or consider [Furutani's] failure to testify or to present evidence of his innocence, it would be speculation on the part of this Court to find that those "reminders" would cure the prejudice created by the improper remarks and discussions.

Accordingly, the circuit court concluded as a matter of law "that the possible misconduct at voir dire and the misconduct during deliberations deprived [Furutani] of a trial by twelve fair and impartial jurors."

The State timely appealed the circuit court's FOFs, COLs, and order. Furutani remains free on supervised release pending disposition of the appeal.

## II. *STANDARD OF REVIEW*

■ As a general matter, the granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of

discretion. *See State v. Sugiyama*, 71 Haw. 389, 390, 791 P.2d 1266, 1267 (1990) (trial court abused discretion in denying motion for new trial); *Mehau v. Reed*, 76 Hawai'i 101, 112–13, 869 P.2d 1320, 1331–32 (Sup.1994) (no abuse of discretion in denying motion for new trial); *State v. McNulty*, 60 Haw. 259, 268, 588 P.2d 438, 445 (1978), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979) (*id.*). The same principle is applied in the context of a motion for new trial premised on juror misconduct. *Sugiyama, supra*; *see also State v. Potter*, 711 S.W.2d 539, 541 (Mo.App.), *reh'g and/or transfer to Sup.Ct. denied*, 711 S.W.2d 539 (1986) ("To grant a new trial on the basis of a juror's concealment of a fact or a juror's failure to respond to a voir dire question is left to the discretion of the trial court.").

"The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." *Kaneohe Bay Cruises, Inc. v. Hirata*, 75 Haw. 250, 258, 861 P.2d 1, 6 (1993) (citations omitted); *see also State v. Matias*, 74 Haw. 197, 203, 840 P.2d 374, 377 (1992); *State v. Akina*, 73 Haw. 75, 78, 828 P.2d 269, 271 (1992).

III. *THE CIRCUIT COURT WAS NOT CLEARLY ERRONEOUS IN CONCLUDING THAT FURUTANI WAS DEPRIVED OF A TRIAL BY TWELVE FAIR AND IMPARTIAL JURORS AND THEREFORE COMMITTED NO ABUSE OF DISCRETION IN GRANTING FURUTANI'S MOTION FOR NEW TRIAL.*

### A. *General Principles*

■ "A fair trial by an impartial jury is guaranteed to the criminally accused by both the sixth amendment [to] the United States Constitution and article I, § 14 of the Hawai['li Constitution," *State v. Williamson*, 72 Haw. 97, 102, 807 P.2d 593, 596 (1991),[9] "as well as by principles of due process under both the state and federal constitutions." *State v. Altergott*, 57 Haw. 492, 495, 559 P.2d 728, 732 (1977) (citing *State v. Pokini*, 55 Haw. 640, 526 P.2d 94 (1974)); [10] *see also State v. Keliiholokai*, 58 Haw. 356, 357, 569 P.2d 891, 893 (1977). "Because the right to an impartial jury in a criminal trial is so fundamental to our entire judicial system," *State v. Larue*, 68 Haw. 575, 579–80, 722 P.2d 1039, 1043 (1986), it therefore follows that "[a] criminal defendant is entitled to twelve impartial jurors." *Sugiyama*, 71 Haw. at 391, 791 P.2d at 1267. Thus, the trial court must grant a motion for new trial if any member (or members) of the jury was not impartial; failure to do so necessarily constitutes an abuse of discretion. *Id.*

■ The trial judge, at a hearing on a motion for new trial, acts as the trier of fact. *Martinez v. State*, 846 S.W.2d 348, 349 (Tex. App.1992). In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. *State v. Hutch*, 75 Haw. 307, 328, 861 P.2d 11, 22 (1993) (citations omitted). "An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." *Id.* (citations and internal quotation marks omitted); *see also State v. Batson*, 73 Haw. 236, 246, 831 P.2d 924, 930, *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992). And

[w]here there is substantial evidence, which is credible evidence of sufficient

**9.** The sixth amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial [ ] by an impartial jury of the State and district wherein the crime shall have been committed . . . ."

Article I, § 14 of the Hawai'i Constitution (1978) provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the district wherein the crime shall have been committed . . . ."

**10.** The [s]ixth [a]mendment [to the United States Constitution] . . . guarantees "trial, by an impartial jury . . ." in federal criminal prosecutions. Because "trial by jury in criminal cases is fundamental to the American scheme of justice," the [d]ue [p]rocess clause of the [f]ourteenth [a]mendment guarantees the same right to state criminal prosecutions. *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968).

*Nebraska Press Ass'n. v. Stuart*, 427 U.S. 539, 551, 96 S.Ct. 2791, 2799, 49 L.Ed.2d 683 (1976).

quantity and probative value to justify a reasonable person in reaching conclusions that support the FOFs, the FOFs cannot be set aside. Moreover, an appellate court will not pass upon issues dependent upon credibility of witnesses and the weight of the evidence; this is the province of the trial judge.

*Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 116–17, 839 P.2d 10, 28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citations and internal quotation marks omitted).

■ " 'A COL is not binding upon an appellate court and is freely reviewable for its correctness.' " *AIG Hawaii Ins. Co. v. Estate of Caraang*, 74 Haw. 620, 628, 851 P.2d 321, 326 (1993) (quoting *Amfac, Inc.*, 74 Haw. at 119, 839 P.2d at 28). This court ordinarily reviews COLs under the right/wrong standard. *In re Estate of Holt*, 75 Haw. 224, 232, 857 P.2d 1355, 1359, *reconsideration denied*, 75 Haw. ——, 863 P.2d 989 (1993) (citation omitted). Thus, " '[a] COL that is supported by the trial court's [FOFs] and that reflects an application of the correct rule of law will not be overturned.' " *Estate of Caraang*, 74 Haw. at 628–29, 851 P.2d at 326 (quoting *Amfac, Inc.*, 74 Haw. at 119, 839 P.2d at 29). "However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." *Id.* at 629, 851 P.2d at 326 (quoting *Amfac, Inc.*, 74 Haw. at 119, 839 P.2d at 29) (internal quotation marks omitted).

Therefore, in accordance with the foregoing principles, the ultimate question in the present appeal is whether the circuit court committed an abuse of discretion when it concluded that "possible" jury misconduct at voir dire, in combination with jury misconduct during deliberations, deprived Furutani of a trial by twelve fair and impartial jurors.

Pursuant to the analysis set forth below, we hold that it did not.

### B. *Conceptual Framework*

In *Keliiholokai, supra, State v. Amorin,* 58 Haw. 623, 574 P.2d 895 (1978), and *Williamson, supra,* this court articulated various aspects of the principles and procedures that govern the approach to which the trial courts of this state must adhere in assessing claims of the denial of the right to a fair trial by an impartial jury. Accordingly, a holistic overview of these cases generates a useful "road map" of the conceptual framework that we apply in cases such as this.[11]

We begin with the proposition that

not all juror misconduct necessarily dictates the granting of a new trial. A new trial will not be granted if it can be shown that the jury could not have been influenced by the alleged misconduct. [HRPP] Rule 52(a) [12] ... directs that any error will be harmless and disregarded if it does not affect the substantial rights of the complaining party.

*Amorin,* 58 Haw. at 630, 574 P.2d at 900 (citations and footnote omitted).

However, when a defendant in a criminal case claims a deprivation of the right to a fair trial by an impartial jury,

the initial step for the trial court to take ... is to determine whether the nature of the [alleged deprivation] rises to the level of being substantially prejudicial. If it does not rise to such a level, the trial court is under no duty to interrogate the jury.... And whether it does rise to the level of substantial prejudice ... is ordinarily a question committed to the trial court's discretion....

*Keliiholokai,* 58 Haw. at 359, 569 P.2d at 895 (citations and internal quotation marks omitted).

---

11. We note that allegedly prejudicial pretrial publicity was at issue in *Keliiholokai; Amorin* and *Williamson,* on the other hand, involved improper juror consultation of a dictionary prior to and during jury deliberations, respectively. The guidelines prescribed in each of these cases, however, are equally relevant to the global issue of a defendant's constitutional right to a fair trial by an impartial jury. We therefore believe that,

in combination, they provide the basis for a uniform approach to the problem.

12. HRPP 52(a) (1989), entitled "Harmless Error," provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

Where the trial court does determine that such [alleged deprivation] is of a nature which could substantially prejudice the defendant's right to a fair trial, a rebuttable presumption of prejudice is raised. The trial judge is then duty bound to further investigate the totality of circumstances surrounding the [alleged deprivation] to determine its impact on jury impartiality. The standard to be applied in overcoming such a presumption is that the [alleged deprivation] must be proved harmless beyond a reasonable doubt.

*Williamson*, 72 Haw. at 102, 807 P.2d at 596 (citations and internal quotation marks omitted).

■ The defendant bears the initial burden of making a *prima facie* showing of a deprivation that "could substantially prejudice [his or her] right to a fair trial" by an impartial jury. *See id.; cf. Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind.1988) ("A defendant seeking a hearing on juror misconduct must first present some specific, substantial evidence showing a juror was possibly biased." (citation omitted)). But once a rebuttable presumption of prejudice is raised, the burden of proving harmlessness falls squarely on the prosecution.

## C. *Juror Nondisclosure During Voir Dire*

### 1. *Relevant legal principles*

■ Globally speaking, "proof that a juror was biased against the defendant or lied on *voir dire* [to the defendant's prejudice] entitles the defendant to a new trial." *Lopez*, 527 N.E.2d at 1130 (citations omitted). This is because in order to exercise the right to a fair and impartial jury in a meaningful way,

a defendant interrogates prospective jury members in order to reach his [or her] own conclusions as to who should sit on that jury. It is the duty of each prospective juror to answer the questions propounded to him [or her] fully, fairly and truthfully in order that his [or her] qualifications be assessed and that the challenges, peremptory or for cause, be utilized intelligently.

*State v. Hatcher*, 835 S.W.2d 340, 342 (Mo. App.), *reh'g and/or transfer to Sup.Ct. de-*

*nied*, 835 S.W.2d 340 (1992) (citations omitted).

"Every failure of a potential juror to respond to a question during voir dire[, however,] does not entitle a defendant to a new trial." *Id.* at 342–43 (citation and internal quotation marks omitted). As we have noted, the defendant must meet the threshold burden of a *prima facie* showing that the failure " 'rises to the level of being substantially prejudicial.' " *Williamson*, 72 Haw. at 102, 807 P.2d at 596 (quoting *Keliiholokai*, 58 Haw. at 359, 569 P.2d at 895).

Other jurisdictions vary in their articulation of the precise nature of a defendant's *prima facie* burden. For example, it has been held that "[i]n order to warrant a new trial, there must be a showing that the [juror's] misconduct [at voir dire] was gross, and that it probably harmed the defendant." *Lopez*, 527 N.E.2d at 1130 (citations omitted). Some courts require proof of intentional "concealment of the truth" regarding a matter that has been expressly investigated during voir dire under circumstances where the complaining counsel does not have knowledge of the juror's deception. *Hatcher*, 835 S.W.2d at 343 (citations omitted); *see also Potter*, 711 S.W.2d at 541. Others require either an "untruthful response on voir dire" or "a juror's concealment of information which may have been material to whether that juror would be excused by peremptory challenge or for cause, when such concealment is not revealed or discovered until after trial" and the failure to discover the concealment or untruthfulness was not "due to a lack of diligence by the complaining party." *State v. McGough*, 536 So.2d 1187, 1189 (Fla. Dist.Ct.App.1989) (citations omitted); *see also Fielder v. State*, 683 S.W.2d 565, 571 (Tex.Ct.App.1985) ("When a partial, biased, or prejudiced juror is selected without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the answers given to him on voir dire not knowing them to be inaccurate, good ground exists for a new trial." (citation and internal quotation marks omitted)).

■ In our opinion, the common thread unifying the standards set forth above is enunciated most clearly by the Colorado Su-

preme Court in the following manner, which we now adopt as the law of this state:

> Under some circumstances a juror's nondisclosure of information during jury selection may be grounds for a new trial. Where, for example, a juror deliberately misrepresents important biographical information relevant to a challenge for cause or a peremptory challenge or knowingly conceals a bias or hostility towards the ·defendant, a new trial might well be necessary. In such instances the juror's deliberate misrepresentation or knowing concealment is itself evidence that the juror was likely incapable of rendering a fair and impartial verdict in the matter.

*People v. Dunoyair*, 660 P.2d 890, 895 (Colo. 1983) (citations omitted). On the other hand, we agree with the Colorado Supreme Court that proof of a juror's "inadvertent" nondisclosure of information "of only peripheral significance" fails to meet the defendant's *prima facie* burden of demonstrating presumptive prejudice. *Id.* (citations omitted).

Indeed, a review of this court's case law reveals that we have, in substance, implicitly been following the *Dunoyair* rule for almost a decade. In *Larue, supra,* for example, the defendant was convicted of four counts of sex offenses committed against three minors, all of whom testified at his trial. On appeal, he urged, *inter alia,* that the jury foreperson's statement, heard by seven other panel members during deliberations, regarding the reliability of testimony by children as to sexual molestation at a very early age, expressly based upon the foreperson's personal experience with such an event at the age of three and her ability to recall it accurately, deprived him of his right to a trial by an impartial jury under article I, § 14 of the Hawai'i Constitution. *Id.* 68 Haw. at 576, 722 P.2d at 1040–41. Inasmuch as "the central question [at trial] was the reliability of the three minors' statements with respect to their alleged sexual molestations by the [de-

fendant]," we agreed. Reversing the defendant's convictions, we ruled that

> had [the] foreperson ... revealed the experience, and her recollection thereof, during the voir dire, there can be no question that she would have been subject to a challenge for cause, because it is clear that, given the central issue of reliability of the children's statements in this case, a person with such an experience and recollection thereof cannot, no matter how hard he or she tries, really be an impartial juror.

*Id.* at 578, 722 P.2d at 1042.

Explicit in our ruling in *Larue* was a recognition that the foreperson's childhood experience constituted "important biographical information relevant to a challenge for cause." *See Dunoyair*, 660 P.2d at 895. Although we opined, based on the record before us, that the foreperson's failure to reveal the experience and her recollection of it during voir dire "was innocent[ ] and inadvertent," *LaRue*, 68 Haw. at 578, 722 P.2d at 1042,[13] we implicitly ruled that the nondisclosure was anything but "of peripheral significance," given the "centrality" of the reliability of the children's testimony. The record further revealed that the trial court had expressly inquired during voir dire whether any veniremember had "been a victim of a sexual nature" and that the foreperson had failed to respond. *Id.* at 577, 722 P.2d at 1041. Accordingly, the defendant and his counsel were justified in relying on her silence.

Likewise, in *Sugiyama, supra,* we held that the trial court abused its discretion in refusing to grant a new trial when, during voir dire, a juror gave an untruthful answer to the very question at issue in the present case. 71 Haw. at 390–91, 791 P.2d at 1267. The juror was specifically asked: "Will you hold it against the defendant if he doesn't testify?" *Id.* at 390, 791 P.2d at 1267. The juror answered "No." *Id.* At the hearing on the defendant's motion for new trial, the trial

---

13. Because the *Larue* foreperson's nondisclosure during voir dire was "innocent and inadvertent," it naturally follows that it was not a "deliberate misrepresentation." *See Dunoyair*, 660 P.2d at 895. Nevertheless, the record in *Larue* establishes that the foreperson both consciously relied on her personal childhood experience as a sex as-

sault victim and, based on that experience, communicated her assessment of the credibility of the children's testimony to her fellow jurors. 68 Haw. at 577–78, 722 P.2d at 1041–42. Accordingly, as of that time, her failure to disclose her bias amounted to a "knowing concealment." *See Dunoyair*, 660 P.2d at 895.

court expressly found that, during voir dire, the juror in question had failed honestly to reveal his bias against criminal defendants who failed to testify in their own defense.[14] The trial court further found that, subsequent to voir dire and despite the fact that the court had instructed the jury that the defendant had a right not to testify and that no adverse inferences were to be drawn therefrom, the juror, on at least five occasions, had voiced to one or more other members of the jury his consternation at the defendant's failure to testify and his view that if he—the juror—"were innocent, [he] would take the stand to defend [him]self." *Id.* at 390–91, 791 P.2d at 1267.

Based on the trial court's FOFs, and citing *Larue*, we held that:

> [I]n this case had the juror in question responded truthfully to the voir dire inquiry he would have been excused for cause because he could not be an impartial juror. A criminal defendant is entitled to twelve impartial jurors. [The defendant] in this case, because of the false answer, did not have a trial before twelve impartial jurors. The trial court abused its discretion in refusing to grant a new trial.

*Id.* at 391, 791 P.2d at 1267.

### 2. *Application of relevant law to present case*

We now turn directly to the portion of the State's claim on appeal that urges that the circuit court erred in concluding as a matter of law that "possible" jury misconduct at voir dire deprived Furutani of a trial by twelve fair and impartial jurors.

The State challenges the circuit court's FOFs Nos. 1 and 2, *see supra* at 8, on the ground that "defense counsel ... did not

obtain a *commitment* from the [jury] panel as a whole, or from any individual juror for that matter, that they would not hold [Furutani's] failure to testify or otherwise present evidence against him." State's opening brief at 16 (emphasis added). The State further explains that "there is no evidence to support the [circuit] [c]ourt's finding that the jurors *answered* 'yes' to the question posed by defense counsel." *Id.* (emphasis added). And insofar as FOFs Nos. 4 and 5, *see supra* at 8, incorporate the voir dire process, the State makes essentially the same argument, concluding that "it was ... error to find that one or more jurors harbored ... a bias or prejudice [against Furutani] and concealed that fact during voir dire." State's opening brief at 17. We agree in part.

■■■■■■ It is clear from the record that, after explaining that the law does not require a criminal defendant either to testify or present any evidence, but rather entitles him to put the prosecution to its burden of proof beyond a reasonable doubt, defense counsel, during voir dire, posed a series of questions to the jury venire as a whole inquiring, in substance, whether the veniremembers would hold against Furutani any possible failure to testify or otherwise present evidence in his own behalf. Our review of the videotaped record, however, fails to disclose any discernible response, affirmative or otherwise, from any member of the jury panel. Accordingly, the record in this case is devoid of *any* evidence that the jury venire collectively (1) made a "commitment" to defense counsel (FOF No. 1), (2) by way of an affirmative "response" to his questions (FOF No. 2), (3) that they would harbor no bias or prejudice against Furutani despite having "indicated [to] the contrary" during voir dire (FOF No. 5).[15] That being the case, we are

---

14. Thus, for purposes of the *Dunoyair* rubric, the juror's failure in *Sugiyama* constituted a "knowing concealment." *See Dunoyair*, 660 P.2d at 895.

15. There is a lesson to be learned from defense counsel's failure to elicit or make a record of the jury panel's responses to his questions. We recognize that it is common practice (which, for preliminary purposes, some trial judges require) for trial counsel to pose questions to the panel collectively and then to question individually those veniremembers who respond affirmatively

to a given question. This practice is perfectly proper, especially inasmuch as it expedites the trial process. However, in order to avoid the very dilemma with which we are faced in this appeal, trial counsel would be well advised to request, as a threshold matter, that any venire-member who holds a belief, bias, or prejudice, which is contrary to the proposition posed by a question, so indicate orally. As an adjunct to this practice, trial counsel should make a record that silence on the panel's part will be deemed to signify that no panel member holds a belief, bias,

"left with the definite and firm conviction that a mistake has been committed," *Hutch*, 75 Haw. at 328–29, 861 P.2d at 22; *see also Batson*, 73 Haw. at 246, 831 P.2d at 930, and those references in the circuit court's FOFs to a "commitment," "respon[se]," or "indica[tion to] the contrary" on the part of the jury panel are therefore clearly erroneous.

This does not mean, however, that the circuit court erred in concluding as a matter of law that "possible misconduct at voir dire ... deprived [Furutani] of a trial by twelve fair and impartial jurors." Inasmuch as the circuit court's COL was "dependent upon the facts and circumstances" of the voir dire proceeding, it presents a mixed question of fact and law and is thus reviewed under the clearly erroneous standard. *Estate of Caraang*, 74 Haw. at 629, 851 P.2d at 326. Accordingly, the question becomes whether the COL is supported by substantial evidence, *Amfac, Inc.*, 74 Haw. at 116–17, 839 P.2d at 28, and reflects an application of the correct rule of law. *Estate of Caraang*, 74 Haw. at 628–29, 851 P.2d at 326.

It is significant that, in its statement of points of error on appeal, the State does *not* directly challenge the circuit court's findings that (1) "the jurors were given an opportunity during voir dire to reveal their bias or prejudice against a defendant who failed to testify or present evidence of his innocence" (FOF No. 5), (2) "the jury was properly instructed by the [c]ourt as to these issues" (FOF No. 3), and (3) "one or more members of the jury ... discuss[ed] [Furutani's] failure to testify and his failure to present evidence of his innocence" (FOF No. 4).

In connection with the quoted portion of FOF No. 5, we note that we are faced with facts dissimilar to those of *Sugiyama* in one key respect. Unlike the situation presented in *Sugiyama*, counsel failed to obtain any articulated answers to his questions directed at the right to remain silent and to refrain from presenting exculpatory evidence. Therefore, none of the jurors in the present case actually uttered an untruthful statement or prejudice that would require a response. In this way, trial counsel can obtain a "commit-

during voir dire. Unquestionably, though, they were given a clear opportunity to do so.

As we have noted, it is not necessary for prospective jurors to go so far as to tell lies during voir dire in order to justify a new trial. On the contrary, "[u]nder some circumstances a juror's *nondisclosure* of information during jury selection may be grounds for a new trial." *Dunoyair*, 660 P.2d at 895 (emphasis added). Such nondisclosure may take the form of "knowingly conceal[ing] a bias or hostility towards the defendant." *Id.*; *cf. McGough*, 536 So.2d at 1189; *Hatcher*, 835 S.W.2d at 343; *Potter*, 711 S.W.2d at 541. And insofar as a "juror's ... knowing concealment [can] itself [be] evidence that the juror was likely incapable of rendering a fair and impartial verdict," *Dunoyair*, 660 P.2d at 895, the converse can also be true; direct evidence of incapability of rendering a fair and impartial verdict may legitimately give rise to an inference of prior knowing concealment.

The record before us contains ample evidence that notwithstanding defense counsel's inquiry during voir dire, the circuit court's instructions, and the repeated admonitions of fellow jurors, the jury's deliberations were peppered with: (1) general comments enunciated on at least two days of deliberations regarding Furutani's failure to testify in his own behalf, including (a) "He didn't go up there and say that he wasn't guilty so he's guilty," (b) "[W]hy didn't he testify and ... try to prove himself innocent," and (c) the suggestion that because Furutani did not testify he was hiding something; (2) a statement, apparently made *after* the circuit court reread the relevant jury instructions at the request of the foreperson, that if various signatures purporting to be Furutani's were in fact not his, Furutani would have taken the stand and said so; and (3) comments from one or more jurors that defense counsel should have presented affirmative evidence of Furutani's innocence, including "[H]ow come he didn't have anybody testify for him if he was innocent[?]"

ment" by silence.

The foregoing constitutes substantial evidence on the basis of which the circuit court could infer that one or more jurors had, during voir dire, knowingly concealed a bias against defendants who failed to testify or present evidence of their innocence, *see Dunoyair,* 660 P.2d at 895, and that the bias, being of the sort that would have resulted in a successful challenge for cause, *see Sugiyama,* 71 Haw. at 391, 791 P.2d at 1267, was substantially prejudicial to Furutani. *See Keliiholokai,* 58 Haw. at 359, 569 P.2d at 895. The rebuttable presumption of prejudice having been raised, the circuit court could determine that the State had failed to meet its burden of overcoming it beyond a reasonable doubt. *See Williamson,* 72 Haw. at 102, 807 P.2d at 596. That being the case, we hold that the circuit court's COL that "the possible misconduct at voir dire ... deprived [Furutani] of a trial by twelve fair and impartial jurors" is not clearly erroneous. *See Estate of Caraang,* 74 Haw. at 628–29, 851 P.2d at 326.[16]

### D. *Juror Misconduct During Deliberations*

#### 1. *Relevant legal principles*

▆▆ We agree with the Texas Court of Criminal Appeals that "[a] bare allusion in the jury room to [a] defendant's failure to testify when immediately suppressed [by admonitions from fellow jurors that such comment is improper] will not of itself cause the judgment of conviction to be set aside." *Ward v. State,* 520 S.W.2d 395, 396 (Tex. Crim.App.1975) (citation and internal quotation marks omitted). After all, the *fact* that a criminal defendant has not testified in his or her defense is self-evident to everyone involved in the proceedings, including the members of the jury. Accordingly, a mere *verbalization* of, or "casual reference" to, *see*

*Carrillo v. State,* 566 S.W.2d 902, 914 (Tex. Crim.App.), *reh'g en banc denied,* 566 S.W.2d 902 (1978), that self-evident fact, standing alone, is not substantially prejudicial to the defendant. "To constitute reversible error, such reference must amount to a discussion by the jurors or be *used as a circumstance against the accused." Id.* (emphasis added and citations and internal quotation marks omitted).

The general question, therefore, becomes whether the defendant has been substantially prejudiced by *particular* comments or statements made by jurors during deliberations regarding his or her failure to testify. *See Lopez v. Sears, Roebuck and Co.,* 70 Haw. 562, 563–64, 777 P.2d 715, 716 (1989); *Williamson,* 72 Haw. at 102, 807 P.2d at 596.

The difficulty in showing prejudice arising from jury misconduct [during deliberations] is that [u]nder [Hawai'i Rules of Evidence (HRE) ] 606(b) ...,[17] we cannot consider ... jurors' testimony as to the effect of the improper statement[s] upon them. We can only consider whether such ... statement[s] [were] made ..., and whether, given [those] statement[s], we can say that [the defendant] had a trial before an impartial jury.

*Sears, Roebuck and Co.,* 70 Haw. at 564, 777 P.2d at 716 (quoting *Larue,* 68 Haw. at 579, 722 P.2d at 1042–43).

▆▆ "[R]ecogniz[ing] the difficulty in making a showing of prejudice under these constraints," *id.,* we hold that when a criminal defendant makes a *prima facie* showing that improper juror comments during deliberations have been "used as a circumstance against" him or her, *see Carrillo,* 566 S.W.2d at 914, "there is a presumption of prejudice and the verdict will be set aside unless it is clearly shown that the juror's [comments] could not have affected the verdict." *Sears,*

---

16. We are unpersuaded by the State's argument that the circuit court's COL is "erroneous because ... it ignores the fact that the jury acquitted [Furutani] of one count and convicted him of a lesser charge on another." State's opening brief at 19.

17. HRE 606(b) (1985) provides:

Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict

or indictment, a juror may not testify concerning the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. Nor may the juror's affidavit or evidence of any statement by the juror indicating an effect of this kind be received.

*Roebuck and Co.*, 70 Haw. at 564, 777 P.2d at 717 (citations omitted).[18] And consistent with our case law, the burden is on the prosecution to make such a "clear showing" beyond a reasonable doubt. *Williamson*, 72 Haw. at 102, 807 P.2d at 596; *Larue*, 68 Haw. at 578, 722 P.2d at 1042; *Amorin*, 58 Haw. at 630, 574 P.2d at 900.

### 2. *Application of relevant law to present case*

 As a final matter, we address the remaining portion of the State's claim on appeal, namely, that the circuit court erred in concluding as a matter of law that the jury misconduct during deliberations deprived Furutani of a fair trial.

The State challenges the circuit court's FOF No. 6, finding that "one or more members of the jury, by mentioning and discussing [Furutani's] failure to testify and his failure to present evidence of his innocence contrary to the Court's instructions, did commit misconduct," *see supra* at 57, arguing that

> while one or more of the jurors made mention of [Furutani's] failure to testify or otherwise produce evidence, other jurors stated that this matter could not be considered, a fact found by the [circuit] court in

[FOF] No. 7.... More importantly, the [circuit] court never instructed the jurors that they could not even mention the fact of [Furutani's] failure to testify or otherwise produce evidence or that, if they did so, deliberations would be stopped or the verdict invalidated.

State's opening brief at 18–19. The State likewise takes issue with the circuit court's "implied finding" in FOF No. 7 that Furutani had been prejudiced by the alleged misconduct. *Id.* at 19. We are unconvinced.

Like the circuit court's other FOFs, FOFs No. 6 and 7 are reviewed under the clearly erroneous standard. *Estate of Caraang*, 74 Haw. at 629, 851 P.2d at 326. Consequently, the question is whether the COL is supported by substantial evidence, *Amfac, Inc.*, 74 Haw. at 116–17, 839 P.2d at 28, and reflects an application of the correct rule of law. *Estate of Caraang*, 74 Haw. at 628–29, 851 P.2d at 326.

We have already determined that the comments of one or more jurors during deliberations regarding Furutani's failure to testify or otherwise present evidence of his innocence constitute substantial evidence of misconduct. *See supra* at 63–64. On the basis of this substantial evidence, the circuit court could legitimately have found that more than

---

**18.** When "used as a circumstance against the accused," *Carrillo*, 566 S.W.2d at 914, a juror's comments regarding a defendant's failure to testify are presumptively prejudicial because they constitute an *ipso facto* demonstration that the juror "could not be ... impartial" and "would have been excused for cause" had the juror's bias been made known during voir dire. *See Sugiyama*, 71 Haw. at 391, 791 P.2d at 1267.

Courts must be especially sensitive to the need to protect non-testifying criminal defendants from juror bias and prejudice precisely because the failure to make some affirmative showing of innocence is so innately counterintuitive. The benchmark empirical study of the jury system, now a "legal classic," describes the problem as follows:

> ... It is a characteristic of American law that it allows the defendant to decide for himself whether he will testify and gives him the privilege of not testifying if he so wishes. This privilege, a variant of the constitutional privilege against self-incrimination, has been a celebrated point of legal controversy since the days of Jeremy Bentham.... [T]he legal rule not only protects the defendant from testifying, but

also says that no inference may be drawn from his failure to do so. Critics of the rule have stressed that this is quixotic and self-defeating, since the trier of fact cannot avoid drawing a negative inference when the defendant refuses to testify, no matter what the formal rule is. The defendant, it is argued, must know more about his alleged innocence than anyone else, and if he decides to withhold evidence, he must be doing so for a reason.

> The data cannot decide the public controversy. However, considerable light is thrown on the strategic game the defendant in the criminal trial often plays in deciding whether or not to testify. To begin with, it has been seen that the defendant testifies in 82 per cent of all cases and elects not to testify in only 18 per cent. Thus, in the large majority of cases, the defendant clearly prefers the balance of advantages and disadvantages that come from testifying. The strategic considerations may be complex.... Against [the] potential advantages to be gained by the defendant's silence is to be weighed the common-sense inference of the defendant's guilt, if he chooses not to talk.

H. Kalven and H. Zeisel, *The American Jury* 143–45 (1966).

"bare allusion[s]," *see Ward*, 520 S.W.2d at 396, or "casual reference[s]," *see Carrillo*, 566 S.W.2d at 914, to Furutani's failures had occurred, but rather that the references were "used as a circumstance against the accused," *see id.*, by one or more of the jurors. That being the case, a legal presumption of prejudice would arise, *see Sears, Roebuck and Co.*, 70 Haw. at 564, 777 P.2d at 717, requiring that the jury's verdict be set aside absent a showing beyond a reasonable doubt that the jurors' comments could not have affected the verdict. *See id.; Williamson*, 72 Haw. at 102, 807 P.2d at 596; *Larue*, 68 Haw. at 578, 722 P.2d at 1042; *Amorin*, 58 Haw. at 630, 574 P.2d at 900. And in light of the evidence of the jurors' comments, the circuit court's finding that "it would be speculation ... to find that [the] 'reminders' [of other jurors that it was improper to discuss or consider Furutani's failure to testify or present evidence of innocence] would cure the prejudice" (FOF No. 7) was tantamount to a finding that the State had failed to meet its burden. We are not left with "the definite and firm conviction that a mistake has been committed," *Hutch*, 75 Haw. at 328–29, 861 P.2d at 22; *see also Batson*, 73 Haw. at 246, 831 P.2d at 930, and FOFs No. 6 and 7 are therefore not clearly erroneous.

We hold that the circuit court's COL that juror "misconduct during deliberations deprived [Furutani] of a trial by twelve fair and impartial jurors" was not clearly erroneous. *See Estate of Caraang*, 74 Haw. at 628–29, 851 P.2d at 326.

## IV. *CONCLUSION*

Inasmuch as the circuit court's FOFs and COL were not clearly erroneous, we hold that the circuit court did not commit an abuse of discretion in granting Furutani's motion for new trial. *See Sugiyama*, 71 Haw. at 390, 791 P.2d at 1267.

Affirmed.