**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000036
25-JAN-2024
07:58 AM
Dkt. 100 SO**

NO. CAAP-18-0000036

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


REID OISHI, Plaintiff-Appellant,
and
HAWAII EMPLOYER'S MUTUAL INSURANCE COMPANY, INC.,
Plaintiff-Intervenor-Appellee,
v.
JOSE A. GANEL, Defendant-Appellee,
and
DOE DEFENDANTS 1-100, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 14-1-1675-08)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and Nakasone, JJ.)

Plaintiff-Appellant Reid Oishi (**Oishi**) appeals from the

January 5, 2018 Final Judgment (**Judgment**) entered by the Circuit

Court of the First Circuit (**Circuit Court**)[1] in favor of

Defendant-Appellee Jose A. Ganel (**Ganel**) and against Oishi and

Plaintiff Intervenor-Appellee Hawaii Employers' Mutual Insurance

---

[1]     The Honorable Jeffrey P. Crabtree presided.

Company, Inc. (**HEMIC**). Oishi also challenges the Circuit Court's December 7, 2017 Order Denying Plaintiff's Motion for an In-Court Examination of the Foreperson of the Discharged Jury (**Order Denying Motion for Examination**), the January 5, 2018 Order Denying Plaintiff's Motion for a New Trial Based on Jury Misconduct and Motion to Set Aside Jury Verdict (**Order Denying Motion for New Trial**), and the January 5, 2018 Order Granting [Ganel's] Motion for Taxation of Costs (**Order Taxing Costs**).

Oishi raises four points of error on appeal. In his first three points of error, Oishi contends that the Circuit Court abused its discretion in entering the Order Denying Motion for Examination and the Order Denying Motion for New Trial. In his fourth point of error, Oishi contends that the Circuit Court erred in awarding costs to Ganel based on a Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 68 Offer of Settlement.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Oishi's points of error as follows:

(1) Oishi contends that the Circuit Court abused its discretion when it denied Oishi's Motion for New Trial and Motion for Examination. During *voir dire*, one of the jurors withheld that he had been involved in a near identical rear-end collision, and the juror later injected facts regarding the juror's accident during deliberations, which Oishi contends amounts to substantial

2

prejudice.[2]  Oishi points to, *inter alia*, a Washington state case explaining that "[w]hen a juror withholds material information during *voir dire* and then later injects that information into deliberations, the court must inquire into the prejudicial effect of the combined, as well as the individual, aspects of the juror's misconduct."  State v. Briggs, 55 Wash. App. 44, 53, 776 P.2d 1347, 1352 (1989).

During *voir dire*, the Circuit Court and counsel asked jurors numerous questions in an effort to ensure each juror could be fair and impartial, including the following questions, which were cited by Oishi as relevant to the issue presented on appeal:

---

[2]     An affidavit from Oishi's attorney regarding the foreperson's statement states:

> 6.     . . . [T]he foreperson volunteered that [sic]during the deliberations in the jury room that one of the jurors said that he also owns a Toyota Tacoma and that he had been involved [sic] in a similar rear-end collision and that his Tacoma did not sustain any damage.  The foreperson also volunteered that the juror said that the person who rear-ended him was traveling at approximately the same speed that Defendant Ganel testified he was traveling when he rear-ended Plaintiff Oishi.

> 7.     The foreperson said that he took into consideration what the juror said about his own experience of being rear-ended in the juror's own Toyota Tacoma.

However, Hawaiʻi Rules of Evidence (**HRE**) Rule 606(b) provides, in pertinent part:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify concerning the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.  Nor may the juror's affidavit or evidence of any statement by the juror indicating an effect of this kind be received."

Thus, we disregard the foreperson's statement that he considered the juror's comments while deliberating.

THE COURT: . . . <u>The question is, can you sit on this case and be completely neutral</u>?

Because we can't have -- we can't have any jurors starting the case kind of leaning, you know, one way or the other. We have to have everybody as completely neutral. But the only way to know that is to ask you, how do you feel about it? So let me just ask you flat out, how do you feel about it? I mean, I understand you have these connections. But how do you feel about its ability to perhaps affect you during this trial?

. . . .

THE COURT: Okay. Thank you. So next questions, <u>have any of you, or a close friend, relative or loved one, ever been involved in a case that sounds at all similar to this one</u>?

<u>Okay. Let the record reflect no response</u>.

. . . .

[THE COURT:] So with that in mind, is there <u>anyone here who can think of any reason, whether it's been raised or not so far, but any reason whatsoever why you think it might even be a little bit difficult for you to be completely fair and neutral to both sides</u>?[3]

. . . .

THE COURT: Have you ever been involved in any kind of a, you know, lawsuit before?

THE JUROR: (Shakes head.)

THE COURT: Anybody that you know or close to ever been involved in a lawsuit before?

THE JUROR: (Shakes head.)

THE COURT: No? Okay. Can you think of any <u>reason at all, you know, whether it makes sense or not, but any reason at all that you can say out loud that it might be hard for you to be completely fair to everybody here</u>?

THE JUROR: (Shakes head.)

Q     [by Attorney for Oishi] My question now is, this case is not like a car demolishing another car. There are -- and you will be shown some photographs. And it's not like the car had to be towed away. <u>Is there anybody that has these preconceived ideas that, you know what, you can't be injured unless your car is totaled? Anything like that? Any prior experience</u>? Anything you have heard on TV? Unfortunately

---

[3]     The court repeats this question multiple times throughout *voir dire*.

we're all the product of either social media now, TV,
movies.  And a lot of that constructs how we view things.
So I'm just saying, are you -- will you promise to be open
minded, to listen to the evidence?

(Emphasis added).

The Court denied Oishi's motions because the court viewed the *voir dire* questions as equivocal or not specific enough to the issue.  For example, the jury was not asked if they had ever been in a car accident, they were asked if they had been involved in a case similar to this one.  When ruling on the Motion for New Trial, the court said:

> As far as the voir dire, again, I keep going back to
> it, based on everything I have in this record right now I
> cannot say that one of those jurors lied during voir dire,
> or expressly made a misrepresentation during voir dire, or
> deliberately failed to disclose something that they believed
> to be relevant during voir dire.  There's an inference that
> maybe they did, but it's an inference that's easily rebutted
> by just simple logic and experience.
>
> Take the back injury, for instance.  I mean, if a
> juror is not disclosing that they had a back injury and the
> question was never directly put to them, "have you ever had
> a back injury," what does that mean?
>
> It could mean they don't think it's going to cause any
> problem with them being fair and impartial so they don't
> even bother to mention it.  It could mean, I suppose, I'm
> not going to tell them about that because medical privacy.
> They could say, I'm not going to tell them about that 'cause
> he didn't really ask for it and it's none of their business.
> It could mean I'm not going to tell them about that because
> they might kick me off the case, and they want to serve on
> the jury.
>
> There are lots of interpretations that some cut in
> plaintiff's favor, some cut in the defense favor.  I'm not
> smart enough to figure out which they were in this case
> based on the record I've got, and I mean that in all
> seriousness.  I'm not trying to be cute about it.  I do not
> as I sit here right now, I do not have any conviction one
> way or the other on that.  I just don't.  I don't know how
> to interpret it.
>
> So bottom line is I'm denying the motion.

When faced with a question of juror misconduct, "[t]he defendant bears the initial burden of making a *prima facie*

showing of a deprivation that "<u>could</u> substantially prejudice [his or her] right to a fair trial by an impartial jury." <u>State v. Chin</u>, 135 Hawaiʻi 437, 443, 353 P.3d 979, 985 (2015) (emphasis added) (quoting <u>State v. Williamson</u>, 72 Haw. 97, 102, 807 P.2d 593, 596 (1991)).  The Hawaiʻi Supreme Court has articulated a two-part test for when a defendant in a criminal or civil case claims a deprivation of the right to a fair trial by an impartial jury:

> [T]he initial step for the trial court to take is to determine whether the nature of the alleged deprivation rises to the level of being substantially prejudicial.  If it does not rise to such a level, the trial court is under no duty to interrogate the jury.  And whether it does rise to the level of substantial prejudice is ordinarily a question committed to the trial court's discretion.
>
> Where the trial court does determine that such alleged deprivation is of a nature which <u>could substantially prejudice the defendant's right to a fair trial</u>, a rebuttable presumption of prejudice is raised.  The trial judge is then duty bound to further investigate the totality of circumstances surrounding the alleged deprivation to determine its impact on jury impartiality.  The standard to be applied in overcoming such a presumption is that the alleged deprivation must be proved harmless beyond a reasonable doubt.

<u>Chin</u>, 135 Hawaiʻi at 445, 353 P.3d at 987 (citation omitted, emphasis altered).  This test does not require a defendant to prove substantial prejudice before a court has a duty to investigate the circumstances.  <u>Id.</u> at 446, 353 P.3d at 988.

> Under some circumstances a juror's nondisclosure of information during jury selection may be grounds for a new trial.  Where, for example, a juror deliberately misrepresents important biographical information relevant to a challenge for cause or a peremptory challenge or knowingly conceals a bias or hostility towards the defendant, a new trial might well be necessary.  In such instances the juror's deliberate misrepresentation or knowing concealment is itself evidence that the juror was likely incapable of rendering a fair and impartial verdict in the matter.

> . . . [However,] proof of a juror's "inadvertent" nondisclosure of information "of only peripheral significance" fails to meet the defendant's prima facie burden of demonstrating presumptive prejudice.

State v. Furutani, 76 Hawaiʻi 172, 182, 873 P.2d 51, 61 (1994) (citation omitted).

The Circuit Court distinguished this case from State v. Larue, 68 Haw. 575, 722 P.2d 1039 (1986), which Oishi relies upon. In Larue, the jury foreperson in a child molestation case told other jurors she had a similar experience as a child and that testifying victims could recall the experiences. Id. at 577-78, 722 P.2d at 1041-42. The Larue court noted that the jurors were asked "if anyone had been the victim or had friends or family member been a victim of a sexual nature." Id. at 577, 722 P.2d at 1041.

> Had foreperson Chung revealed the experience, and her recollection thereof, during the voir dire, there can be no question that she would have been subject to a challenge for cause, because it is clear that, given the central issue of reliability of the children's statements in this case, a person with such an experience and recollection thereof cannot, no matter how hard they try, really be an impartial juror."

Id. at 578, 722 P.2d at 1042.

In Furutani, the supreme court explained its decision in Larue, stating:

> Explicit in our ruling in Larue was a recognition that the foreperson's childhood experience constituted important biographical information relevant to a challenge for cause. Although we opined, based on the record before us, that the foreperson's failure to reveal the experience and her recollection of it during voir dire was innocent and inadvertent, we implicitly ruled that the nondisclosure was anything but of peripheral significance, given the centrality of the reliability of the children's testimony. The record further revealed that the trial court had expressly inquired during voir dire whether any veniremember

> had been a victim of a sexual nature and that the foreperson had failed to respond.

Furutani, 76 Hawaiʻi at 182, 873 P.2d at 61 (citations, internal quotation marks and brackets omitted).

Importantly, the supreme court noted:

> Because the Larue foreperson's nondisclosure during voir dire was innocent and inadvertent, it naturally follows that it was not a deliberate misrepresentation. Nevertheless, the record in Larue establishes that the foreperson both consciously relied on her personal childhood experience as a sex assault victim and, based on that experience, communicated her assessment of the credibility of the children's testimony to her fellow jurors. Accordingly, as of that time, her failure to disclose her bias amounted to a knowing concealment.

Id. at 182 n.13, 873 P.2d at 61 n.13 (citations and internal quotation marks omitted). Here, the Circuit Court stated:

> The Larue case is really interesting because it's, on its facts in terms of statements made during the deliberations, it's probably the closest thing we have to what happened here. However, Larue also involves that a clear failure to disclose the jurors' unfortunate experience with sexual abuse when directly asked on voir dire, and I just don't think we have that here in this case.

We conclude that the Circuit Court abused its discretion in concluding that the juror's withholding that he was involved in a near-identical collision and then communicating to his fellow jurors that he did not sustain injuries like Oishi claims could not substantially prejudice Oishi, without first conducting an in-court examination.

Although the jury was not explicitly asked whether they had been involved in a similar automobile accident, the jury was asked if they had been involved in a case that sounds similar to this, whether anyone has any reason why it might be a little bit difficult to be fair, and whether anyone believes a person cannot

8

be injured unless that person's car is totaled either from prior experience or from what they have seen on TV.  Importantly, the juror's nondisclosure was not regarding something of peripheral significance, it went to the heart of the jury decision, whether Oishi was injured as a result of Ganel's action.  The Circuit Court's reasoning for denying Oishi's Motion for New Trial and Motion for Examination was based on the court not believing that the misconduct amounted to the level of misconduct Hawaiʻi courts found in other cases.  But that is not the proper analysis.  See Chin, 135 Hawaiʻi at 443-44, 353 P.3d at 985-86.  Instead of applying the Williamson analysis outlined in Chin, which instructs the trial court to first determine whether the misconduct "could substantially prejudice the defendant's right to a fair trial," 72 Haw. at 102, 807 P.2d at 596, the Circuit Court here simply considered whether the potential juror misconduct was as egregious as other juror misconduct cases.  Thus, the court's first step should have been to consider whether the alleged misconduct *could be* substantially prejudicial.  With that, the court could have determined whether it had a duty to investigate.  We conclude that the silence of the juror during *voir dire* concerning his personal experience in a very similar car accident, combined with the juror's communication of that prior experience to the rest of the jury could amount to knowing concealment.  See Furutani, 76 Hawaiʻi at 182 n.13, 873 P.2d at

61 n.13. This alleged misconduct rises to a level that could substantially prejudice Oishi, which is sufficient to trigger an investigation into the totality of the circumstances of the alleged misconduct. The Circuit Court abused its discretion in determining that there was no need to conduct an investigation and no prejudice.

At this point, an investigation including the questioning of the jury is impractical if not impossible. Therefore, this case must be remanded for a new trial.[4]

(2) Oishi argues that the Circuit Court erred in awarding Ganel's costs pursuant to HRCP Rule 68 because (1) the settlement did not expressly reference the lien that HEMIC held on any settlement Oishi recovered, and (2) Ganel's attorney did not properly serve HEMIC with the settlement offer.

We address Oishi's second argument first as it is dispositive. It is undisputed that, as the Circuit Court found, the HRCP Rule 68 offer of settlement was not properly served on HEMIC. Ganel argues, *inter alia*, that there is no evidence that HEMIC was unaware of the offer and could not accept it in a timely manner.

---

[4] Accordingly, we do not reach Oishi's further arguments.

HRCP Rule 68 states:

**Rule 68. OFFER OF SETTLEMENT OR JUDGMENT.**

At any time more than 10 days before the trial begins, any party may serve upon any adverse party an offer of settlement or an offer to allow judgment to be taken against either party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall, in accordance with the agreement, enter an order of dismissal or a judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, either party may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

Pursuant to this rule, if a party fails to accept a Rule 68 offer within 10 day of service, that party is subject to a potentially significant adverse award of costs. Proper service of the offer, not just an offeree's awareness of it, triggers an obligation to pay an offerer's costs. <u>See</u>, <u>e.g.</u>, <u>Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co.</u>, 100 Hawaiʻi 97, 120, 58 P.3d 608, 631 (2002) ("an offer that does not satisfy the requirements of [HRCP] Rule 68 does not entitle the offeror to the special benefits of [HRCP] Rule 68"). Thus, we conclude that the Circuit Court erred in entering the Order Taxing Costs.

11

For these reasons, we vacate the Circuit Court's January 5, 2018 Judgment, as well as the challenged orders, and remand this case to the Circuit Court for a new trial.

DATED: Honolulu, Hawaiʻi, January 25, 2024.

On the briefs:

Fernando L. Cosio,
for Plaintiff-Appellant.

Thomas Tsuchiyama,
for Defendant-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge