STATE OF HAWAII, Plaintiff–Appellee, v. RICHARD L. WILLIAMSON, Defendant–Appellant

NO. 14246

(CR. NO. 88–1742)

MARCH 18, 1991

LUM, C.J., HAYASHI, WAKATSUKI, AND MOON, JJ., AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE TANAKA, IN PLACE OF PADGETT, J., RECUSED

## OPINION OF THE COURT BY MOON, J.

Defendant–Appellant Richard L. Williamson (appellant) appeals from his conviction of three counts of promoting a dangerous drug in the second degree. Appellant raises two issues. The first is whether the trial court erred in denying appellant's motion for mistrial when a dictionary was discovered in the jury room following deliberations. The second issue is whether the trial court erred in denying appellant's motion for mistrial based on prosecutorial misconduct. Finding merit in appellant's first argument, we reverse the conviction.

### I.

On September 29, 1988, appellant was indicted on three counts of knowingly distributing cocaine. A jury trial commenced on September 29, 1989. On October 2, 1989, following the evidentiary portion of the trial, the court instructed the jury. The court's charge included the definition and the burden of proof regarding the defense of entrapment as well as the definition of "preponderance of the evidence." The instructions in issue provide:

> Evidence has been introduced which raises the defense of entrapment. The defense of entrapment, if

proven, entitles Mr. Williamson to an acquittal, even though the prosecution has proven the commission of the offense.

While the prosecution must prove the commission of the offense, it is the defendant who has the burden of proving the defense of entrapment. However, while the prosecution must prove its case beyond a reasonable doubt, *the burden of the defendant to prove entrapment is to prove it by a preponderance of the evidence. This means that the defendant must prove that it is more likely than not that entrapment took place.*

There are *four material elements to entrapment.* These four elements are:

1. That the defendant did engage in the prohibited conduct or caused the prohibited result;

2. That the defendant was induced or encouraged to do so by a law enforcement officer;

3. The law enforcement officer did, for the purpose of obtaining evidence of the commission of the offense, employ methods of persuasion or inducement;

4. That the conduct of the law enforcement officer was such that it created a substantial risk that the offense would be committed by defendant who was not ready to commit the crime.

(Emphasis added.)

Soon after the jury resumed deliberations on the following morning, October 3, 1989, it requested a dictionary to look up the words "preponderance" and "entrapment." The court denied the request and referred the jury to the specific instructions that defined each word.

After the jury ended deliberations on October 4, 1989, but before the verdict was returned, the bailiff entered the jury room and discovered a Webster's dictionary. With respect to the

definitions of the words "entrapment" and "preponderance," ***Webster's New Collegiate Dictionary*** 381, 909 (1976), provides:

> ***entrap***: 1 : to catch in or as if in a trap 2 : to lure into a compromising statement or act[.]

> ***preponderance***: 1 : *a superiority in weight* or in power, importance or strength 2 a: a superiority or excess in number or quantity b: majority[.]

(Emphasis added.) A hearing was then held wherein the court questioned the foreperson as follows:

> THE COURT: Was the dictionary used at all?

> THE FOREPERSON: No, sir. As a matter of fact, it wasn't. It was brought in this morning by one of the jurors. There was a question yesterday in terms of meaning of one or two words. And, however, today that didn't seem important. And so — or that seemed to have been clarified so that it was, in fact, not used.

> THE COURT: Before the dictionary was used?

> THE FOREPERSON: Before the dictionary was used. So the need for the dictionary didn't come out today. So it wasn't used.

Defense counsel then made an oral motion for mistrial on the grounds that further probing was necessary regarding the identity of the juror who brought the dictionary and whether the offending juror or any other jurors were influenced by the definitions in the dictionary.

> [DEFENSE COUNSEL]: Your Honor, I believe further probing, who brought the dictionary, was it – I mean was the question regarding the definition of the words resolved as a result of her telling them what she found or he found? We would be moving for mistrial.

Before ruling on the motion, the court questioned the jury foreperson again:

THE COURT: I'll direct this to the foreperson. I want to ask who brought the dictionary. I'll ask whether or not whoever brought the dictionary engaged in much discussion about whatever words were troubling you.

THE FOREPERSON: Yes. There was a lot of discussion about these words. And we read and reread from the instructions to find what we needed to know about those words. And that's how those words were clarified, was through the instructions, so that that, in fact, had essentially been cleared up yesterday before the — before the dictionary was brought in today.

THE COURT: So for all intents and purposes, the dictionary wasn't used at all?

THE FOREPERSON: Absolutely not. No, it was not used.

THE COURT: And could you say with some authority that whoever brought the dictionary did not herself or himself look at the words first and then contributed to the discussion relating to those words?

THE FOREPERSON: I could say that, yes, sir, because, as I said, this discussion had arisen yesterday; and these questions had arisen and this need for definition. In clarifying those definitions yesterday, we read and reread from the instructions to clarify those definitions so that, in fact, those were clarified before we came back today so that this — this was not an issue today and did not come up again so that there was really no need for the dictionary at all today. And so it was not used.

THE COURT: I'm not going to probe any further. I'm going to deny the motion for mistrial. I'm going to ask for the verdict.

The jury returned a guilty verdict on all three counts as charged and appellant timely appealed.

## II.

A fair trial by an impartial jury is guaranteed to the criminally accused by both the sixth amendment of the United States Constitution and article I, § 14 of the Hawaii Constitution. Inherent in this requirement is that the jury be free from outside influences. *State v. Keliiholokai*, 58 Haw. 356, 569 P.2d 891 (1977). Once there is a claim that an accused is being denied his or her right to a fair trial because of outside influences infecting a jury,

> the initial step for the trial court to take . . . is to determine whether the nature of the [outside influence] rises to the level of being substantially prejudicial. "If it does not rise to such a level, the trial court is under no duty to interrogate the jury . . . . And whether it does rise to the level of substantial prejudice . . . is ordinarily a question 'committed to the trial court's discretion. . . .' "

*Keliiholokai*, 58 Haw. at 359, 569 P.2d. at 895 (citations omitted). Where the trial court does determine that such influence is of a nature which could substantially prejudice the defendant's right to a fair trial, a rebuttable presumption of prejudice is raised. The trial judge is then duty bound to further investigate the totality of circumstances surrounding the outside influence to determine its impact on jury impartiality. *Keliiholokai*, 58 Haw. 356, 569 P.2d 891 (1977); *State v. Messamore*, 2 Haw. App. 643, 639 P.2d 413 (1982). The standard to be applied in overcoming such a presumption is that the outside influence on the jury must be proven harmless beyond a reasonable doubt. *State v. Amorin*, 58 Haw. 623, 574 P.2d 895 (1978); *State v. Pokini*, 55 Haw. 640, 526 P.2d 94 (1974). The trial court, in its investigation of the totality of circumstances, should include individual examination of potentially tainted jurors, outside the presence of the other jurors, to determine the influence, if any, of the extraneous matters.

The State, in the instant case, concedes that it was juror misconduct to bring a dictionary to the jury room, but contends it was harmless since the foreperson indicated that the dictionary was not consulted by any of the jurors. Appellant argues that whether or not the misconduct was harmless could not be determined because the trial court relied solely upon the foreperson's representations. Appellant contends that the trial court should have identified and questioned the offending juror as to the influence that any of the extraneous dictionary definitions may have had on him or her. We agree.

The function of the jury is to decide questions of fact while the trial court is the sole source of all definitions and statements of law applicable to an issue to be resolved by the jury. During the course of a trial, a juror's obtaining of extraneous definitions or statements of law differing from that intended by the court is misconduct which may result in prejudice to the defendant's constitutional right to a fair trial. *Amorin*, 58 Haw. 623, 574 P.2d 895 (1978). However, not all juror misconduct necessarily compels the granting of a new trial. A new trial will not be granted if it can be shown that the jury could not have been influenced by the alleged misconduct. *Id.*

In *Amorin*, this court held that it was misconduct for a juror to consult three dictionaries for definitions of the term "insanity," defendant's sole defense in his trial for murder. In that case, the trial court's investigation was not restricted to questioning the foreperson. The judge appropriately interrogated the offending juror extensively in order to elicit the "totality of circumstances" surrounding the juror's research efforts and its influence on him. Included within his explanation, the juror testified that during deliberations the only definition he could remember from the dictionaries was the same as the court's instruction and therefore based his vote solely on the definition given by the court. The defendant was convicted and his motion for new trial based on jury

taint was denied. On appeal this court found that the juror's testimony, coupled with the foreman's assurances, indicated that the jury was not influenced by extraneous definitions and held that the juror misconduct was harmless beyond a reasonable doubt.

During deliberations in the present case, the jury requested a dictionary to look up definitions for "preponderance" and "entrapment" which the trial court denied referring the jury to the court's instructions. Unquestionably "preponderance" as defined in the dictionary places a substantially higher burden on appellant in proving his defense of entrapment compared with the standard prescribed in the court's definition of "more likely than not." Therefore, we find that if the court determined that any of the jurors could have been influenced by the dictionary definition of "preponderance," that potential for influence would have risen to the level of substantial prejudice. However, had the juror misconduct revolved solely around the word "entrapment," the trial court would have been completely justified in not further investigating by questioning the jurors since the definition of "entrap" in the dictionary and "entrapment" as defined by the court cannot be said to so differ as to give rise to a finding of being substantially prejudicial.

The trial court apparently perceived that the juror misconduct was related to the word "preponderance" and appropriately determined that further investigation was necessary and interrogated the foreperson. However, by not inquiring into the identity of the juror who brought the dictionary and obtaining a personal explanation from him or her as to its use, the trial court did not have before it the totality of circumstances surrounding the misconduct to decide whether it was harmless.

In this case, questioning of the jury foreperson alone was not sufficiently reliable to ensure that the juror who brought in the dictionary was not infected by looking up the definition of "preponderance" out of the presence of the other jurors. Moreover, we are

not convinced that the rest of the jury members were not, in some way, influenced by the extraneous definition. The state of the record leaves us to speculate. If we are to believe the foreperson's explanation that the definitions in question had been "clarified" on October 3rd, why then was it necessary for the unidentified juror to bring the dictionary into the jury room on October 4th? Determining the answer to this question and others necessitated, at the very least, questioning of the offending juror by the trial court in order to have ascertained whether the juror misconduct was harmless beyond a reasonable doubt.

### III.

Based on the foregoing, we conclude that the necessary totality of circumstances surrounding the juror misconduct was not revealed, and therefore the misconduct cannot be said to have been harmless beyond a reasonable doubt. The judgment is reversed and the case is remanded for a new trial.

*Vickie L. Silberstein*, Deputy Prosecuting Attorney, for Plaintiff–Appellee.

*Ronette Horie* (*Adrienne Sanders* on the brief), Deputy Public Defenders, for Defendant–Appellant.