**Marlin E. LEISHER, Sr., and Beatrice Leisher, Appellees,**

**v.**

**Peter CONRAD, M.D., Appellant.**

**No. 93–7104.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 30, 1994.

Decided Dec. 20, 1994.

Alfred F. Belcuore, Washington, DC, argued the cause, for appellant. With him on the briefs, was Stephen L. Altman, Fairfax, VA.

Brian C. Shevlin, Arlington, VA, argued the cause and filed the brief, for appellees.

Before EDWARDS, Chief Judge, and SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

During deliberations in a malpractice suit brought against Dr. Peter Conrad, two jury members misinterpreted as menacing an innocent gesture made by Conrad outside the courtroom, and the jury foreman reported the incident to the court. Conrad moved for a mistrial, which the district court judge denied based upon the jury foreman's explanation of the innocence of the gesture to the jury members and his subsequent report to the judge that the jury was reassured. After the jury returned a verdict against him, Conrad moved for a judgment notwithstanding the verdict, which the district court denied. Conrad now appeals the judgment on the basis that the district court failed to conduct an adequate inquiry to determine whether the presumption of prejudice arising from the misconstrued gesture had been overcome. This case presents exceptional circumstances, because there was a glaring dis-

junction between the reality of what occurred and the jurors' perceptions of it. Once the trial judge realized this gulf, it was not unreasonable for him to poll the jury through the foreperson. Accordingly, the district court did not abuse its discretion in allowing the jury to continue its deliberations after questioning the jury foreman. Moreover, Conrad failed timely to object to the district court's procedure. Accordingly, we affirm.

## I. BACKGROUND

Conrad is a surgeon who removed an aneurysm (a localized, abnormal expansion of a blood vessel) from the aorta of Marlin Leisher. Unfortunately, Leisher had a heart attack during or shortly after the operation and also suffered reduced circulation to his left leg, which eventually led to its amputation above the knee. Leisher and his wife, Beatrice, sued Conrad for malpractice claiming that he failed to take Leisher's complete medical history before the operation and did not adequately manage Leisher's condition immediately after surgery and that these failures led to Leisher's heart attack and leg problems.

During jury deliberations, the jury foreman passed a note to the district court judge stating that Conrad had made "menacing gestures" at the jury while they passed through the hallway on their way to lunch. Leisher's counsel stated that he was talking with Conrad in the hall when the jury left for lunch and that Conrad made no menacing gestures at the jury but merely pointed out their presence. Judge Jackson stated that "I take it neither side is going to ask for a hearing on the matter." Conrad's counsel replied that "I don't think we want a hearing," but requested that the court give him some time to consult with his associate.

After a short recess, Conrad's attorney moved for a mistrial on the ground that the jury's misperception of Conrad's gesture indicated prejudice. Leisher's counsel suggested that the court ask the jurors what they saw, advise them that Conrad did not make a menacing gesture, and determine whether they could continue with their deliberations. The district court noted that "inherent in the situation is the possibility that the jury is going to decide this case based upon a perceived animosity on their part towards [Conrad] or vice versa." Conrad's attorney stated that he would agree to a single line of inquiry to the jury to resolve whether the alleged threatening gesture had occurred that day or on a previous day, but he argued that this would still not alleviate the residual prejudice.

The court decided to hold Conrad's motion for a mistrial in abeyance while it had the courtroom cleared and brought in the jury for questioning. Conrad's lawyer then observed that it was possible that not all of the jurors were aware of the complaint and that questioning the jurors together might spread the problem. After defense counsel observed that questioning all jurors might spread the problem, the trial judge said, "I'll start with the foreman" and defense counsel said, "Thank you, your Honor." Accordingly, the judge had the lawyers leave, called the foreman in, and asked him which jurors had reported the incident. The foreman stated that two female jurors told him that Conrad pointed at the jury in a menacing gesture. The foreman also said that the jury had discussed the matter among themselves and that all of the jurors were aware of it.

The judge asked the foreman whether the jury would be able to resume their deliberations if the court were to assure them that the gesture they saw was misconstrued as menacing and whether this matter would interfere with the jury's decision. The foreman responded that he felt that they would be able to resume deliberations and that the incident would not interfere with their decision. The judge then asked the foreman to explain to the rest of the jury that Conrad's gesture was not menacing and report back to the court whether the jurors were still troubled by the incident or whether they could continue to deliberate. The foreman left the courtroom and returned to report back to the court that everything was fine and that everyone was reassured.

After this exchange, the judge recalled the lawyers, related what had transpired with the jury foreman, and told Conrad's attorney that he was going to let the jury continue

deliberating. Conrad's attorney replied that he would note his objection for the record, presumably referring to his previous request for a mistrial on the grounds that his client could never get a fair trial, and the court responded that it was prepared to accept the jury foreman's assurances. Conrad's attorney then stated, "That's not my problem. My problem is the genesis of the comment to begin with." He argued that the incident showed an underlying prejudice that could not be cured. The judge stated that he did not agree because he believed the jury was following his instruction to inform the court if anyone tried to communicate with them. The judge therefore denied Conrad's motion for a mistrial. Approximately an hour and a half later, the jury returned a verdict in favor of the Leishers for $2 million.

At a hearing at a later date, the court denied Conrad's motion for judgment notwithstanding the verdict, stating that although the issue was not free from doubt, the court was "reasonably satisfied that the inquiry of the foreman and his inquiry in turn of the two jurors who had perceived the gestures and his immediate reassurance that once having had it explained to them that there was no gesture intended and the jurors did not feel that they had been compromised, the integrity of the jury was not fundamentally compromised."

## II. DISCUSSION

■ Although it is undisputed that Conrad's gesture was entirely innocent, any private communication to a juror during a trial is presumptively prejudicial. *See United States v. Fafowora,* 865 F.2d 360, 363 (D.C.Cir.), *cert. denied,* 493 U.S. 829, 110 S.Ct. 98, 107 L.Ed.2d 62 (1989); *United States v. Williams,* 822 F.2d 1174, 1188 (D.C.Cir.1987) (presumption of prejudice operable even if the communication consisted only of "banter" not clearly directed at influencing jury's verdict). The presumption of prejudice may be overcome, however, and the innocuous nature of the contact will have a bearing on the question whether prejudice has actually occurred. *Williams,* 822 F.2d at 1188 n. 147. On appeal, this court must defer to the district court's appraisal of prej-

udice unless it is manifestly unreasonable. *See Fafowora,* 865 F.2d at 363; *Hobson v. Wilson,* 737 F.2d 1, 49 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Moreover, a trial court has wide latitude in determining the method of inquiry into possible prejudice. *Williams,* 822 F.2d at 1189–90.

■ Conrad argues that the district court improperly relied on the jury foreman to communicate its instructions and ascertain whether the jury could continue to deliberate fairly, and he further avers that the district court should have conducted a hearing to determine whether the presumed prejudice had been overcome. *See Remmer v. United States,* 347 U.S. 227, 229–30, 74 S.Ct. 450, 451–52, 98 L.Ed. 654 (1954); *United States v. Butler,* 822 F.2d 1191, 1196 (D.C.Cir.1987) (proper procedure when confronted with improper jury contact is to hold a hearing). While he concedes that deference is owed to the district court's appraisal of prejudice, he maintains that this deference is based upon the trial court's first-hand observation of the affected jurors. *See, e.g., Williams,* 822 F.2d at 1189 (trial court, which has a first-hand impression of the jury, is in a better position to determine whether the presumption of prejudice has been rebutted). Because the district judge did not examine the affected jurors directly, Conrad argues that his appraisal of prejudice was manifestly unreasonable.

■ As noted in *Williams,* 822 F.2d at 1188–89, the trial court is best qualified to make an assessment of juror bias, which requires consideration of several factors, such as the nature and length of the juror contact, the possibility of removing juror taint by a limiting instruction, and the impact of the communication on the jury. While there are times when the threat of prejudice is significant enough to require a separate examination of jurors, there is no *per se* rule that individual questioning is always required. *Id.* at 1189. Given the nature of this case, it was not unreasonable for the district court judge to use the foreman to clear up the jurors' misperception and to rely on him to report the jurors' responses at least where neither party requests a further procedure.

In cases where the contact with the jury is not such an obvious misunderstanding, or where a proper request is made, questioning of the jury foreman alone will likely not be sufficient to ensure that any prejudice has been dispelled. *Accord State v. Williamson,* 72 Haw. 97, 807 P.2d 593 (1991).

Here, Conrad's trial counsel *never* objected to the district court's questioning of the jury foreman, the chosen procedure. *See Williams,* 822 F.2d at 1190. *Williams* clearly disposes of this case. In *Williams,* a similar sequence of events occurred. The defense counsel "agreed that the steps the District Court proposed to take, and actually took, to alleviate the risk of prejudice were sufficient 'if a mistrial is not going to be granted.'" *Id.* (footnote omitted). The defense counsel "did not request that each juror be questioned individually." *Id.* Likewise in this case, although Conrad's counsel on appeal attempts to argue that such an objection was made at trial, it is clear from the transcript that counsel did not request a hearing or demand that each juror be questioned individually. Counsel actually objected to such a procedure because it might spread the taint to previously unaffected jurors and therefore agreed that the district court should start by questioning the foreman. Although it turned out that all the jurors were aware of the incident, trial counsel did not then object to the district court's reliance on the foreman; counsel merely renewed his request for a mistrial arguing that prejudice could not be rooted out of the jurors' minds. Conrad had ample opportunity to participate in the court's inquiry into possible bias; if he believed additional procedural steps were necessary to remove the risk of prejudice, he should have requested them at that time. *See id.* Having chosen at trial to stand in this mistrial-or-nothing posture, Conrad cannot now be heard to complain of a procedure he never questioned in the trial court; nor can he assign as error the trial court's refusal to employ a procedure he never requested. As we said in *Williams,* "[w]hen a contact does occur but the trial is salvageable, the court and counsel for both sides must work together to neutralize its impact. Those who are called to participate in this endeavor cannot be allowed to argue after the fact that more should have been done." 822 F.2d at 1190.

## III. CONCLUSION

The district court's method of inquiry and its appraisal of prejudice were not manifestly unreasonable. Furthermore, because Conrad did not ask for a hearing or individual questioning of the jurors, he cannot be allowed to argue after the fact that more should have been done. The judgment appealed from is accordingly

*Affirmed.*