971 P.2d 304

STATE of Hawai'i, Plaintiff–Appellant,

v.

Raymond K.K. AUGUSTIN,
Defendant–Appellee.

No. 19992.

Intermediate Court of Appeals of Hawai'i.

Nov. 23, 1998.

Certiorari Denied Dec. 30, 1998.

Donn Fudo, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellant.

Myles S. Breiner, on the brief, for defendant-appellee.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

Opinion of the Court by BURNS, C.J.

The State of Hawai'i (the State) appeals the First Circuit Court's July 22, 1996 Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion for New Trial or in the Alternative, for Mistrial (July 22, 1996 FsOF, CsOL and Order), which ordered a new trial. We affirm.

This case involves issues of (1) a juror's improper investigation and (2) a juror's improper disclosure of the results of that improper investigation to other jurors. We decide issue (1) in favor of defendant-appellee Raymond K.K. Augustin (Augustin). Therefore, we do not decide issue (2).

## BACKGROUND

On June 11, 1994, Augustin was allegedly involved in an argument with the brother of his sister's husband, Larry Basuel (Basuel), which ended when Augustin allegedly shot Basuel three times with a semi-automatic handgun and killed him. On June 20, 1994, Augustin was charged with Murder in the Second Degree, Hawai'i Revised Statutes (HRS) §§ 707–701.5(1) and 706–656 (1993), and Place to Keep Pistol or Revolver, HRS

§ 134–6(c) and (e). On March 27, 1996, a jury found Augustin guilty on both counts.

On April 4, 1996, Augustin filed a Motion for New Trial. An unauthorized investigation by a juror was not one of the grounds he asserted in his motion. Augustin's motion was supported by a declaration by juror Paula Mauhili (Mauhili). Mauhili's declaration stated that she, "along with three other jurors[,]" had disagreed with the verdict of Murder in the Second Degree and had instead supported a verdict of Manslaughter. Mauhili's declaration did not allege an unauthorized investigation by a juror. On May 9, 1996, Augustin filed a Supplemental Memorandum Regarding Defendant's Motion for New Trial in which he asserted additional grounds for a new trial. One of these new grounds was based on an allegation of "juror investigation and disclosure of defendant's confidential welfare records." Defendant's Second Supplemental Memorandum Regarding Motion for New Trial alleged that juror Erlinda Delacruzham (Delacruzham, Delacruz-ham, DelaCruzham, or Delacruz–Ham), a welfare worker for the State, was the juror who made the investigation and disclosure. It alleged that Delacruzham "obtained confidential information about [Augustin] and his family from the State computer files and disclosed that information to members of the jury panel."

On May 14, 1996, the circuit court held special proceedings during which the jurors were examined by the parties and the court. During these proceedings, Delacruzham denied accessing Augustin's welfare file:

Q. [Deputy Prosecuting Attorney] Mr. Van Marter told you you were accused by one of the jurors of accessing personal information of a confidential nature about [Augustin] and disclosing that to the jurors?

A. Yes.

Q. And today under oath you deny doing that?

A. Yes.

Q. You never did that?

A. Yes.

Q. You never disclosed to Miss Mauhili and other jurors, and I'm referring specifically to Diane Guerrero, Eunice Wong and Paula Mauhili, that [Augustin] was specifically receiving welfare and that you had accessed your own computer to obtain that information? You never told them that.

A. I never told them that.

However, jurors Mauhili and Diane Guerrero (Guerrero) testified that Delacruzham told them that she had accessed Augustin's welfare file. Mauhili testified in relevant part as follows:

Q. Miss Mauhili, we're just going to focus on what occurred after—we're focusing on allegations regarding Miss Delacruz–Ham. At the close of the hearing last time you appeared in court on this motion you informed me about Miss Delacruz–Ham disclosing information about Raymond Augustin's welfare records; is that correct?

A. Inadvertently I did, yes.

Q. Okay. Is there a reason why you previously didn't disclose this information to myself or the Court?

A. Because I didn't want to get her in trouble. I'm afraid she's going to lose her job or get reprimanded or something.

Q. Can you tell the Court specifically about when during the trial did Miss Delacruz–Ham tell you that she had information about [Augustin's] welfare record?

A. It might have been second week into the trial.

Q. Do you know, can you tell us specifically what did she say to you about [Augustin's] welfare record?

A. She had just made mention that they were on welfare, she gave approximately how much they were making, she said approximately $2,000.00, they got X amount for food, they got X amount for car allowance and X amount for rent, she said.

Q. Did she tell you how she learned this information?

A. Well, she said she had looked it up and also their—their reason for being on welfare.

Q. What reason did she tell you that they were on welfare?

A. She said that Julie's reason was because she needed to stay home and take

care of the baby and that Raymond's excuse or reason was for staying home and taking care of Shandell. . . .

Q. Okay. Now she specifically identified the name of [Augustin's] wife as Julie?

A. I believe she did, yeah.

Q. Did she tell you how she got this information?

A. Well, she said she got it from work.

Guerrero testified in relevant part as follows:

Q. And [Delacruzham] told you the information about [Augustin], she told you she got the information through working as a social worker?

A. Yes.

Q. And she had accessed the computers?

A. Yes.

Q. And that she pulled information about [Augustin]?

A. Yes.

Q. That how much specifically he was getting a month, $2,000.00 per month?

A. I don't know if specifically. She gave us roundabout figures of a family of his size.

* *.*

Q. Would you agree with me it [juror Delacruzham's statements to juror Guerrero] wasn't positive information about [Augustin], like good things?

A. Well, like anybody on welfare, about anybody in the system, I guess.

Q. So she was giving you general impressions of people, general impressions how much money they get?

A. Yes.

Q. They tend to have children and they aren't working and should work, things like that?

A. Yeah.

Q. And she was saying things in a negative sense like, you know, a lot of people on welfare shouldn't be on welfare, should be out working?

A. Right.

Q. And, for instance, like [Augustin], how young he is and has a young family should be out working and not on welfare?

A. Well, I don't know if she spoke of [Augustin] himself but.

Q. Would it be a fair conclusion that that was the impression you had?

A. Yes.

* * *

Q. At lunchtime when you guys—you had lunch here in the building or over on Restaurant Row?

A. We went to—outside.

Q. And [Delacruzham] would tell you about her clients and the kind of work she does as a social worker?

A. Right.

Q. And is it at that time she said that she had gone back to the computer and accessed information about [Augustin]?

A. Probably.

Q. Is it during one of those luncheons?

A. I'm pretty sure.

* * *

Q. Did anyone make a comment that they were not happy, not particularly pleased with the notion that they were a single parent working hard supporting themselves and their child or children and that [Augustin] was receiving welfare? Anyone make that comment?

A. No[.]

Q. Did you?

A. I'm a single parent.

Q. At any point did you say to [Mauhili] words to the effect I'm a single parent and—

A. I criticize anybody who is on welfare. I'm a single parent and never took that route.

The court's July 22, 1996 FsOF, CsOL and Order state in relevant part as follows:

### FINDINGS OF FACT

* * *

12. The final allegation of juror misconduct concerned juror Erlinda DelaCruzham's having accessed [Augustin's] confidential welfare files and disclosed some of

the confidential information to other jurors on the panel.

13. Juror Erlinda Delacruzham, an employee of the State of Hawaii [Hawai'i], Dept. of Human Services, told juror Diane Guerrero that she had accessed [Augustin's] welfare file through her computer at work and obtained information regarding [Augustin].

14. Delacruzham discussed [Augustin's] welfare assistance with juror Guerrero, as well as jurors Mauhili or Wong or both.

\* \* \*

17. Delacruzham spoke negatively about welfare recipients, stating that some of them should be out working rather than receiving public assistance, and although Delacruzham did not expressly refer to [Augustin], Guerrero formed the impression that her comments applied to [Augustin].

\* \* \*

20. In his opening statement, Defense [C]ounsel also made reference to the fact that [Augustin] received welfare assistance.

21. If [Augustin's] receipt of welfare assistance was brought up at all during deliberations, it was mentioned in passing, without extensive discussion, and essentially within the context of what had already been made known to the jury about [Augustin's] welfare status through introduction of his statement to the police and what defense counsel had said during opening statement.

\* \* \*

23. Juror Delacruzham obtained confidential information from [Augustin's] welfare file which went beyond the evidence admitted during trial, and shared such confidential information with at least two jurors.

24. The information juror Delacruzham obtained included the amount of assistance [Augustin's] family received, the reasons he and his wife gave to qualify for that assistance, and the amount the family would lose if [Augustin] were sent to prison.

25. According to juror Guerrero, Delacruzham spoke negatively about the validity of some welfare recipients' claims for assistance and Guerrero took her comments to apply to [Augustin].

## CONCLUSIONS OF LAW

\* \* \*

11. [Augustin's] receipt of welfare assistance was neither discussed nor used as a circumstance against [Augustin] during deliberations within the meaning of *Furutani*, and furthermore, jurors who were asked about the effect of [Augustin's] welfare status indicated that it played no part in their determination of the case.

12. Under *State v. Williamson*, 72 Haw. 97[, 807 P.2d 593] (1991), the trial court should include individual examination of potentially tainted jurors, outside the presence of other jurors, to determine the influence, if any, of extraneous matters. However, this is inconsistent with HRE [Rule] 606(b). Under *Williamson*, with the exception of Delacruzham, there is no evidence that [Augustin's] welfare status substantially prejudiced any of the jurors against [Augustin].

13. In *State v. Amorin*, 58 Haw. 623[, 574 P.2d 895] (1978), the Court held that not all juror misconduct necessarily compels the granting of a new trial. A motion for new trial may be denied, however, if the Court is convinced that the misconduct could not have influenced the jury.

14. In *Furutani*, the Court held that because a criminal defendant is entitled to twelve impartial jurors, the trial court must grant the motion for new trial if any one member of the jury was not impartial.

15. It is possible that, given Delacruzham's experience as a social worker and her negative attitude toward [Augustin's] welfare status, her assessment of the truthfulness of [Augustin's] reasons for receiving assistance, as gleaned from his welfare file, could have affected her assessment of the credibility of [Augustin's] statement to police concerning the crimes

charged in this case, and in that way affected her vote and therefore her verdict.

16. In *Lopez v. Sears, Roebuck & Co[.]*, 70 Haw. 562[, 564, 777 P.2d 715, 717 (1989) ], it was held that when there has been unauthorized and improper investigation by one or more jurors, there is a presumption of prejudice and that the verdict will be set aside, unless it is clearly shown that the juror's conduct could not have affected the verdict.

17. Juror Delacruzham's misconduct rose to the level of being *substantially prejudicial.* If juror Delacruzham's misconduct had come to light during jury selection, I have no doubt that she would have been excused for cause.

18. Delacruzham's testimony that [Augustin's] welfare status had no effect on her deliberations is doubtful. Delacruzham denied accessing [Augustin's] file and was directly contradicted by jurors Guerrero and Mauhili. Guerrero had favored a murder verdict all along, but Mauhili's credibility might be suspect because of her dissatisfaction with the verdict. Guerrero's credibility is not in question, and the Court makes its findings substantially based on Guerrero's testimony.

ACCORDINGLY, since the prosecution has not satisfied its burden of proving harmlessness beyond a reasonable doubt, it is hereby ordered that [Augustin's] Motion for New Trial is hereby and the same granted.

## ISSUES

The State challenges findings of fact nos. 14, 17, 23, 24, and 25 and conclusions of law nos. 12, 15, 17, and 18 and contends that the evidence is insufficient to support them.

## AUGUSTIN'S CONSTITUTIONAL RIGHT

A fair trial by an impartial jury is guaranteed to the criminally accused by both the sixth amendment [to] the. United States Constitution and article I, § 14 of the Hawai['i] Constitution, as well as by principles of due process under both the state and federal constitutions. Because the right to an impartial jury in a criminal

trial is so fundamental to our entire judicial system, it therefore follows that [a] criminal defendant is entitled to twelve impartial jurors. Thus, the trial court must grant a motion for new trial if any member (or members) of the jury was not impartial; failure to do so necessarily constitutes an abuse of discretion.

*State v. Furutani,* 76 Hawai'i 172, 179, 873 P.2d 51, 58 (quotation marks and citations omitted) (brackets in original).

## STANDARD OF REVIEW

As a general matter, the granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. The same principle is applied in the context of a motion for new trial premised on juror misconduct.

The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.

\* \* \*

... Because the right to an impartial jury in a criminal trial is so fundamental to our entire judicial system, ... [a] criminal defendant is entitled to twelve impartial jurors. Thus, the trial court must grant a motion for new trial if any member (or members) of the jury was not impartial; failure to do so necessarily constitutes an abuse of discretion.

*Id.,* at 178–179, 873 P.2d at 57–58 (quotation marks and citations omitted).

## BURDENS OF PROOF

In *State v. Jackson,* 81 Hawai'i 39, 912 P.2d 71 (1996), we reiterated the analytical framework within which this court reviews challenges to a jury verdict ... stating:

In *Furutani, supra,* we addressed the general principles and the conceptual framework governing claimed denials of the right to a fair trial by an impartial jury. We explained that "[t]he defendant bears the initial burden of making a *prima facie* showing of a deprivation

that could substantially prejudice [his or her] right to a fair trial by an impartial jury." 76 Hawai'i at 181, 873 P.2d at 60. When a defendant makes ... a claim [that he or she has been deprived the right to a fair trial by an impartial jury], the initial step for the trial court to take is to determine whether the nature of the alleged deprivation rises to the level of being substantially prejudicial.

*State v. Gabalis,* 83 Hawai'i 40, 45–46, 924 P.2d 534, 539–40 (1996).

With respect to an unauthorized and improper investigation by a juror, COL no. 16 states the applicable burden of proof. "[O]nce a rebuttable presumption of prejudice is raised, the burden of proving harmlessness falls squarely on the prosecution." *Furutani,* 76 Hawai'i at 181, 873 P.2d at 60.

## DISCUSSION

Hawai'i Rules of Evidence (HRE) Rule 606, HRS chapter 626 (1993), states in relevant part as follows:

Competency of juror as witness....

(b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify concerning the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

We conclude that the first sentence of conclusion of law no. 18 violates HRE Rule 606(b).[1] Therefore, we ignore that sentence.

1. We agree with the circuit court that the following instruction in *State v. Williamson,* 72 Haw. 97, 102–03, 807 P.2d 593, 596 (1991), exceeds the boundaries of Hawai'i Rules of Evidence (HRE) Rule 606(b), chapter 626, Hawai'i Revised Statutes (1993):

   The trial court, in its investigation of the totality of circumstances, should include individual examination of potentially tainted jurors, outside the presence of the other jurors, to determine the influence, if any, of the extraneous matters.

■ With respect to the issue of a juror's improper investigation, it is the defendant's burden to prove that a juror made an improper investigation. As noted in conclusion of law no. 16, if the defendant satisfies his or her burden, "there is a presumption of prejudice and the verdict will be set aside unless it is clearly shown that the juror's conduct could not have affected the verdict." *Lopez,* 70 Haw. at 564, 777 P.2d at 717 (citations omitted).

■ We conclude that Augustin satisfied his burden of proving that Delacruzham made an unauthorized and improper investigation. The court did not believe Delacruzham's testimony to the contrary. Finding of fact no. 13 is unchallenged. Findings of fact nos. 14, 17, 23, 24, and 25 are not clearly erroneous. Conclusion of law no. 18 does not say that the court did not believe Mauhili. It says that Guerrero's credibility was the court's basis for not disbelieving Mauhili.

■ We agree with the circuit court that the State failed its burden stated in conclusion of law no. 16 of overcoming the presumption of prejudice by proving that Delacruzham's conduct could not have affected Delacruzham's vote. There is a significant difference between knowing only that Augustin is receiving welfare (finding of fact no. 20) and knowing that Augustin's reason for receiving welfare is so that he can stay home with his wife and infant child. Conclusion of law no. 15 is right.

## CONCLUSION

Accordingly, we affirm the circuit court's July 22, 1996 Findings of Fact, Conclusions

* * *

... Appellant contends that the trial court should have identified and questioned the offending juror as to the influence that any of the extraneous dictionary definitions may have had on him or her. We agree.

Although the trial court should try to identify the offending juror and determine the relevant facts, HRE Rule 606(b) bars the trial court from questioning the jurors as to whether and/or how those relevant facts did or did not influence them with respect to their votes.

of Law and Order Granting Defendant's Motion for New Trial or in the Alternative, for Mistrial.