**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000728**
**25-AUG-2020**
**07:50 AM**

NO. CAAP-17-0000728

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
RALPH RIVEIRA, JR., aka Ralph Riveira,
Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1PC131000403 (CR. NO. 13-1-0403))


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Chan, JJ.)

Defendant-Appellant Ralph Riveira, Jr., also known as Ralph Riveira (Riveira), appeals from the September 26, 2017 Judgment of Conviction and Sentence (Judgment) entered by the Circuit Court of the First Circuit (circuit court).[1] After a jury trial, Riveira was convicted of one count of Attempted Assault Against a Law Enforcement Officer in the First Degree in violation of Hawaii Revised Statutes (HRS) § 705-500 (2014)[2] and

---

[1] The Honorable Rom A. Trader presided.

[2] **§705-500 Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if the person:

    (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or

    (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the

707-712.5(1)(a) (2014)[3]. Riveira was sentenced to a ten-year extended term as a multiple and persistent offender.

On appeal, Riveira asserts that his trial counsel provided ineffective assistance of counsel and that the circuit court deprived him of a fair trial when it failed to fully investigate alleged juror misconduct. Riveira also asserts that the circuit court erred by: admitting prior bad act evidence; refusing to remove exhibit labels displaying the initial "attempted murder" classification of the case; and sentencing him to an extended sentence.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Riveira's points of error as follows.

A.    Ineffective Assistance of Counsel

On February 21, 2017, Plaintiff-Appellee State of Hawaiʻi (State) filed its Motion in Limine No. 4, which sought, *inter alia*, to preclude Riveira from introducing medical records, lay or expert testimony, and photographs or demonstrations of the injuries sustained by Riveira as a result of a March 8, 2013

---

crime.

(2)    When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

(3)    Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

[3]    HRS § 707-712.5 provides in pertinent part:

(1)    A person commits the offense of assault against a law enforcement officer in the first degree if the person:

(a)    Intentionally or knowingly causes bodily injury to a law enforcement officer who is engaged in the performance of duty[.]

incident at 1618 Machado Street.  During that incident, Riveira was alleged to have attempted to stab Officer Joselito Obena (Officer Obena) of the Honolulu Police Department with a metal tent stake, which resulted in Officer Obena shooting Riveira.

At the hearing on the State's Motion in Limine No. 4, Riveira's trial counsel confirmed that he would not be introducing any medical evidence or records nor would he be introducing the testimony of experts or other witnesses that treated Riveira for his gunshot wounds.  Rather, Riveira's counsel stated that he would instead seek to introduce lay testimony from Riveira himself as to the injuries he sustained.  Riveira's counsel elaborated that "the reason for that is all the doctors who treated [Riveira] during his stay at Queen's have now relocated to the mainland."  The circuit court entered its Order Granting in Part and Denying in Part State's Motion in Limine No. 4, precluding Riveira from introducing medical records or expert testimony pertaining to the nature or scope of the injuries sustained by Riveira as a result of the March 8, 2013 incident.  However, the circuit court held that Riveira would be permitted to provide lay testimony regarding the location of the injuries sustained as a result of the March 8, 2013 incident and to show such to the jury.

On appeal, Riveira argues that his trial counsel's failure to investigate and introduce testimony of medical and/or ballistics experts amounted to ineffective assistance of counsel.  Riveira posits that the testimonial evidence could have refuted the testimony and evidence adduced from the State's witnesses, and shown that Riveira had not attempted to assault Officer Obena.

Ineffective assistance of counsel claims based on the failure to investigate and obtain witness testimony "must be supported by affidavits or sworn statements describing the testimony of the proffered witnesses." State v. Richie, 88 Hawaiʻi 19, 39, 960 P.2d 1227, 1247 (1998).  Despite Riveira's

3

speculations as to what the medical and/or ballistics experts' testimonies could have established, Riveira fails to point to affidavits or sworn statements in the record indicating what the expert witnesses would have actually testified to and we find none.  See id.  Absent any reliable evidence of what these witnesses would have testified to, we are unable to determine whether the absence of their testimonies deprived Riveira of a potentially meritorious defense.  Accordingly, Riveira's claim for ineffective assistance of counsel fails.

B.    Juror Misconduct

On the first day of the jury trial on March 2, 2017, during the State's presentation of its case, Juror No. 7 reported to the circuit court via a voicemail message that she was concerned about unspecified comments another juror had made to her and one other juror, both of whom she did not identify in her message.  Upon receiving the message from Juror No. 7, the circuit court met with counsel for both parties,[4] outside of the presence of the jury, and stated that

> because the Court has an affirmative duty to investigate, and I'm not sure what the nature of the statement that [Juror No. 7 is] referring to, or the extent of the concern . . . . what I propose is bringing [Juror No. 7] in, allow the Court to speak with her, to gather some information, maybe necessary to speak to more than just that juror, and follow it through to its conclusion, and then we can address the impact of that, if any.

The circuit court then called Juror No. 7 in for questioning. Juror No. 7 stated that the comments she reported were made by Juror No. 1 and regarded Juror No. 1's statements about her inability to remember things, and when Juror No. 7 told Juror No. 1 that it was important to remember the facts, Juror No. 1 said "[w]ho cares."  Further, when Juror No. 7 suggested to Juror No. 1 that maybe she should excuse herself if she did not think she could remember the facts, Juror No. 1 expressed an opinion about the case by making a statement to the effect of, "it's really

---

    4      Riveira was also present.

easy 'cause it looks really bad for [Riveira]."  Juror No. 7 also identified Juror No. 3 as being present when Juror No. 1 made those comments, and the circuit court therefore also questioned Juror No. 3.  After questioning Jurors No. 3 and No. 7 about the alleged comments by Juror No. 1 and whether the comments were heard by other jurors, the circuit court discussed the issue with trial counsel for both parties and upon their agreement, decided to excuse Juror No. 1.  The circuit court called in Juror No. 1 and dismissed her without further inquiry.  An alternate juror replaced Juror No. 1.

On appeal, Riveira asserts that he was deprived of a fair trial due to the circuit court's decision not to question the other jurors, including Juror No. 1, as to whether other jurors were exposed to the comments and could remain fair and impartial.  Inasmuch as Riveira failed to object to the circuit court's handling of the juror's misconduct or move for a new trial, we must determine whether the alleged error amounted to plain error which affected the substantial rights of the defendant.  See State v. Fagaragan, 115 Hawaiʻi 364, 367-68, 167 P.3d 739, 742-43 (2007) ("Normally, an issue not preserved at trial is deemed to be waived.  But where plain errors were committed and substantial rights were affected thereby, the errors may be noticed although they were not brought to the attention of the trial court." (internal quotation marks, citations, and brackets omitted)).

The Hawaiʻi Supreme Court has stated that the following procedure should be followed in the trial court when a defendant claims that the jury was exposed to an improper influence:

> When a defendant in a criminal case claims a deprivation of the right to a fair trial by an impartial jury, the initial step for the trial court to take is to determine whether the nature of the alleged deprivation rises to the level of being substantially prejudicial.  If it does not rise to such a level, the trial court is under no duty to interrogate the jury.  And whether it does rise to the level of substantial prejudice is ordinarily a question committed to the trial court's discretion.

> Where the trial court does determine that such alleged deprivation is of a nature which could substantially prejudice the defendant's right to a fair trial, a rebuttable presumption of prejudice is raised. The trial judge is then duty bound to further investigate the totality of circumstances surrounding the alleged deprivation to determine its impact on jury impartiality. The standard to be applied in overcoming such a presumption is that the alleged deprivation must be proved harmless beyond a reasonable doubt.
>
> The defendant bears the initial burden of making a prima facie showing of a deprivation that could substantially prejudice his or her right to a fair trial by an impartial jury. But once a rebuttable presumption of prejudice is raised, the burden of proving harmlessness falls squarely on the prosecution.

State v. Chin, 135 Hawaiʻi 437, 445, 353 P.3d 979, 987 (2015) (emphases in original) (brackets omitted) (quoting State v. Bailey, 126 Hawaiʻi 383, 399-400, 271 P.3d 1142, 1158-59 (2012)).

Although it is apparent that the circuit court found Juror No. 1's misconduct[5] to have impacted her own ability to serve as a juror, the circuit court did not determine on the record whether the comments purportedly made by Juror No. 1, when conveyed to other jurors, were of a nature that could substantially prejudice Riveira's right to a fair trial. In other words, whether the misconduct could have infected the rest of the jury.

"It is a generally accepted principle of trial administration that jurors must not engage in discussions of a case before they have heard both the evidence and the court's legal instructions and have begun formally deliberating as a collective body." United States v. Resko, 3 F.3d 684, 688–89 (3d

---

[5] "'Juror misconduct' does not necessarily mean a juror's bad faith or malicious motive, but means a violation of, or departure from, an established rule or procedure for production of a valid verdict." Oahu Publ'ns Inc. v. Ahn, 133 Hawaiʻi 482, 490 n.8, 331 P.3d 460, 468 n.8 (2014).

6

Cir. 1993). Although other courts have observed that extra-jury[6] communication poses a far more serious threat to a defendant's right to be tried by an impartial jury than intra-jury[7] communications, they have not foreclosed the possibility that intra-jury communication could be substantially prejudicial. See Resko, 3 F.3d at 690-691 (stating that "[i]t is well-established that [extra-jury communications] pose a far more serious threat to the defendant's right to be tried by an impartial jury," but also holding that "when jury misconduct (including improper intra-jury influences) has been alleged, the district court should: ascertain whether the misconduct actually occurred; if it did, determine whether it was prejudicial[.]"). Intra-jury communication through premature deliberation

> present[s] a number of dangers, all in some manner affecting or touching upon the criminal defendant's Sixth Amendment right to a fair and impartial jury trial. In Resko, [the court] identified a number of these:
>
>> (1) Since premature deliberations are more likely to occur before the defendant has had an opportunity to present his or her case, the prosecution has an unfair influence on the juror's initial impressions;
>>
>> (2) Once a juror has expressed views on a particular issue, that juror has a "stake" in the expressed view and may give undue weight to additional evidence that supports, rather than undercuts, his or her view;
>>
>> (3) Individual conversations between selected jurors thwart the goal of a collective, deliberative process between the jurors as a group;
>>
>> (4) Often, the premature deliberations occur before the jurors are instructed on the reasonable doubt standard, and hence the jurors may reach a result using an incorrect, and unconstitutional, standard

---

[6] "[Extra-jury or] extraneous influence includes, among other things, . . . third-party communications with sitting jurors." Meyer v. State, 119 Nev. 554, 562, 80 P.3d 447, 454 (2003).

[7] "[I]ntra-jury or intrinsic influences involve improper discussions among jurors[.]" Id.

of proof.

United States v. Bertoli, 40 F.3d 1384, 1393 (3d Cir. 1994)
(citing Resko, 3 F.3d at 689–70).

Leading up to the dismissal of Juror No. 1, the circuit
court instructed the jurors on several occasions throughout the
trial to keep an open mind and not to discuss any matter relating
to the case.  Further, after jury selection, the circuit court
relayed to the jurors that

> once the closing arguments are completed, then for the first
> time you will -- the twelve jurors that will be deciding the
> case will retire to the jury deliberation room . . . .  And
> once you're in there . . . , then for the first time you can
> begin to consider the evidence and arrive at decisions that
> you have to make in reaching your verdicts.

The purported pre-deliberation comment made by Juror No. 1
relating to her impression of the case was violative of the
circuit court's instructions and of a nature that could influence
the other jurors' opinions and therefore could substantially
prejudice Riveira's right to a fair trial.  See Chin, 135 Hawaiʻi
at 447-48, 353 P.3d at 989-90 ("While we do not consider whether
a violation of any court instruction may warrant investigation,
here, the court's instruction to the jury specifically directed
'Do not talk to the defendant, lawyers, witnesses or anybody else
connected with this case.'  As the instruction here is consistent
with our historical policy of preventing outside influence on a
jury, the violation of that instruction provides additional
evidence that the influence is of a nature that could
substantially prejudice a defendant's right to a fair trial.");
see also Bertoli, 40 F.3d at 1393.  Therefore, the circuit court
was duty bound to further investigate the totality of
circumstances surrounding the alleged misconduct.

While questioning Jurors No. 3 and No. 7, it appears
that the circuit court also began investigating the issue to
determine the totality of the circumstances surrounding the
alleged misconduct and to determine its impact on jury
impartiality.  During the voir dire of Jurors No. 3 and No. 7,

8

the two jurors confirmed that they did not believe Juror No. 1 conveyed the comments to anyone else or that anyone else overheard Juror No. 1 conveying the comments to them, and that the comments had not affected their own impartiality. However, the circuit court never questioned Juror No. 1, whose purported comments were central to Riveira's assertion of juror misconduct, about what her comments actually were and if they were expressed to anyone else. The circuit court also did not question any other juror. Thus, we conclude that the circuit court did not have the totality of circumstances surrounding the alleged misconduct before it and could not determine whether the purported comments were harmless or not. See Chin 135 Hawaiʻi at 448, 353 P.3d at 990 ("[W]here a prima facie case of improper influence has been shown, raising a presumption of prejudice, the totality of the circumstances includes, at a minimum, the court's examination of the juror or jurors involved in the misconduct."); State v. Williamson, 72 Haw. 97, 104, 807 P.2d 593, 597 (1991) ("[B]y not inquiring into the identity of the juror who brought the dictionary and obtaining a personal explanation from him or her as to its use, the trial court did not have before it the totality of circumstances surrounding the misconduct to decide whether it was harmless."); cf. State v. Amorin, 58 Haw. 623, 631, 574 P.2d 895, 900 (1978) (holding that the trial court had effectively investigated the totality of the circumstances by examining the relevant juror, as well as the foreperson of the jury who had knowledge of the relevant juror's misconduct). The circuit court's failure to voir dire Juror No. 1 and fully investigate the alleged misconduct was an error that affected Riveira's substantial rights and therefore constituted plain error. Based on our disposition of this issue, we need not address Riveira's remaining points of error.

9

IT IS HEREBY ORDERED that the September 26, 2017 Judgment of Conviction and Sentence entered by the Circuit Court of the First Circuit is vacated and the matter is remanded for a new trial.

DATED: Honolulu, Hawaiʻi, August 25, 2020.

On the briefs:

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Salina Kanai Althof,
for Defendant-Appellant.

/s/ Lisa M. Ginoza,
Chief Judge

/s/ Katherine G. Leonard,
Associate Judge

/s/ Derrick H. M. Chan,
Associate Judge