STATE OF HAWAI`I, Plaintiff-Appellee,
v.
CRAIGE K. MAKEKAU, Defendant-Appellant.
Nos. 27622, 27744
Intermediate Court of Appeals of Hawaii.
December 31, 2007.
On the briefs:
Shawn A. Luiz, for Defendant-Appellant.
Donn Fudo, Deputy Prosecuting Attorney, City and County of Honolulu, for Plaintiff-Appellee.

MEMORANDUM OPINION
By: RECKTENWALD, C.J., WATANABE and NAKAMURA, JJ.
Defendant-Appellant Craige K. Makekau (Makekau) appeals from the Judgment filed on October 26, 2005, in the Circuit Court of the First Circuit (circuit court).[1] Makekau was charged by indictment with four counts of first degree sexual assault (Counts 1, 3, 4, and 5) and two counts of third degree sexual assault (Counts 2 and 6).[2] After a jury trial, Makekau was found guilty as charged on all counts. The alleged victim of the sexual assaults (referred to hereinafter as "Minor") was the son of Makekau's girlfriend. Two of the first degree sexual assault counts (Counts 1 and 3) and one of the third degree sexual assault counts (Count 2) alleged that Minor was less than fourteen years old when the offenses were committed. The remaining two counts of first degree sexual assault (Counts 4 and 5) and one count of third degree sexual assault (Count 6) alleged that Minor was at least fourteen but less than sixteen years old when the crimes were committed. The circuit court sentenced Makekau to twenty-year terms of imprisonment on the first degree sexual assault counts and five-year terms of imprisonment on the third degree sexual assault counts, all terms to run concurrently.
After the jury began its deliberations, one of the jurors (hereinafter referred to as "Juror 7") disclosed that she recalled seeing the names of Minor and his brother in connection with her job of processing foster care funds. She also disclosed that her husband's cousin worked for the prosecutor's office. The circuit court and the parties questioned Juror 7 extensively about her disclosures and whether the information she disclosed would affect her ability to be fair and impartial. The circuit court denied Makekau's motion to excuse Juror 7 for cause and allowed her to remain on the jury.
On appeal, Makekau argues that because of Juror 7's belated disclosures, Makekau was deprived of his right to exercise a peremptory challenge during jury selection and thus was deprived of his constitutional right to a fair and impartial jury. Accordingly, Makekau claims that the circuit court erred in failing to declare a mistrial. Makekau further contends that the court erred in denying his motions for judgment of acquittal because there was insufficient evidence to support his convictions. We disagree with Makekau's arguments and affirm his convictions.[3]

BACKGROUND

I. The Trial Evidence
Makekau had been the boyfriend of Minor's mother from the time that Minor was five years old until Minor was fourteen or fifteen years old. Minor testified that from the time that he was ten years old until he was fourteen years old, Makekau had used Minor as "a sex toy." Minor recounted various acts of sexual abuse that Makekau had committed against him, including Makekau's penetrating Minor's mouth with Makekau's penis, Makekau's ejaculating into Minor's mouth, Makekau's fondling of Minor's genitals, and Makekau's subjecting Minor on one occasion to anal intercourse. According to Minor, the sexual assaults took place as often as three times a week.
After one of the early sexual assaults, Makekau told Minor that Minor's mother would "probably kill herself" if she ever found out what Makekau was doing. Minor testified that he refrained from reporting the sexual assaults because he was afraid his mother would kill herself. Minor finally told his grandmother about the sexual assaults about a year after Makekau had stopped abusing Minor. Minor stated that he disclosed the abuse because he grew concerned that Makekau would also sexually abuse Minor's nieces.
Makekau testified at trial and denied the allegations of sexual abuse. Makekau suggested that Minor was falsely accusing him of sexual assault because Minor was angry that Makekau had told Makekau's brother that Minor was gay. Makekau's brother, Darryl, testified about an incident in which Minor threatened to "get [Makekau]" because Makekau had "outed" Minor by telling Darryl that Minor was gay.

II. Disclosures by Juror 7
During jury selection, the circuit court read the names of the possible witnesses in the case and asked the jurors seated in the jury box to respond if they knew or thought they knew the possible witnesses. Minor's name was among the names read. The court recited Minor's name using Minor's English first name, although Minor later testified at trial that he is also known by a nickname which is the Hawaiian equivalent to his first name (hereinafter referred to as "Minor's Hawaiian name").[4] The circuit court also asked the prospective jurors seated in the jury box whether they had "any relatives or close friends who are employed by a law enforcement agency," which the court defined to include the prosecutor's office.
Juror 7 was not seated in the jury box at the time these questions were asked. After the panel of twelve jurors was selected, Juror 7's name was drawn as one of the two prospective alternate jurors. Juror 7 responded "No" when asked whether she had any responses to the questions previously asked that may reflect on her ability to be a fair and impartial juror in the case. Juror 7 stated that she could be fair to both the government and the defense. In response to questions by defense counsel, Juror 7 stated that she worked for the State as an accountant, that she could listen to both sides before making up her mind, that the nature of the sexual assault charges did not cause her any concern, and that she believed it was possible for a child to lie and make up a story. Makekau passed Juror 7 for cause and waived his right to exercise a peremptory challenge as to the prospective alternate jurors. The prosecution did the same. Accordingly, Juror 7 was selected as one of the two alternate jurors. During trial, Juror 7 replaced one of the original twelve jurors who was excused. After closing arguments but before the jury began deliberating, the circuit court dismissed the remaining alternate juror.
One day after the jury began deliberating, a bailiff informed the circuit court and the parties that Juror 7 recalled giving foster funds as an accountant to Minor and Minor's brother. The bailiff referred to Minor by his Hawaiian first name. Juror 7 was called before the circuit court and the parties for questioning about the information she had relayed to the bailiff.
Juror 7 explained that she took care of the foster care program at work and recalled the names of Minor and Minor's brother as receiving foster care money. Juror 7 stated that she was not involved in determining whether children qualified for foster care, did not have direct contact with the children, and was not aware of background information regarding the foster family or children in foster care. Instead, she only would see the names of children in the course of processing claims for foster care benefits.
[Prosecutor]: What do you do?
[Juror 7]: I just have to  well, we have consultants. The consultant look at the fact to see if the kids qualify for foster care and then from there I have those names, so I just, okay, this person got this much, so I get all those information and submit the claim to the federal, so from there I see those names.
[Prosecutor]: The only thing you see is the child's name?
[Juror 7]: Yes.
[Prosecutor]: You don't see the foster family or anything?
[Juror 7]: No.
[Prosecutor]: Do you get any other further background information on any foster family or child in foster care?
[Juror 7]: No.
[Prosecutor]: And you've never met or saw Nirmil and the brother?
[Juror 7]: No.
[Prosecutor]: And you don't have any knowledge about the family or the situation?
[Juror]: No.
Juror 7 also stated that she had never met Minor's mother or grandmother. Juror 7 indicated that she assumed that Minor's family was poor because they qualified for foster care benefits. Juror 7 stated her belief that Minor's family qualified for foster care benefits would not in any way affect her deliberations. She disclosed the information because she wanted to feel comfortable.
While being questioned, Juror 7 also disclosed that her husband's cousin works for the prosecutor's office, but added that she did not know her husband's cousin very well.
[Juror 7]: Another thing I have to tell, though. Well, my husband's cousin works for the prosecutor's office but I don't know her. I do not communicate with her, so I just found out.
THE COURT: You didn't know before? You just found out?
[Juror 7]: I didn't know that  well, I never talked to her. hardly see her.
[Prosecutor]: But did you know that before when we were doing jury selection that she was from the prosecutor's office or you just found out like yesterday?
[Juror 7]: I wasn't thinking anything because I hardly see her.
Juror 7 described the job performed by her husband's cousin as "deal[ing] with the legislature for [the Prosecuting Attorney of the City and County of Honolulu]." In response to the circuit court's questions, Juror 7 stated that the fact that her husband's cousin worked at the prosecutor's office would not make her more sympathetic to the prosecutor in this case and would not make her favor one side over the other. Juror 7 advised the court that she could be fair to both sides. Neither counsel sought to ask questions following the court's inquiry.
Makekau objected to Juror 7 being allowed to remain on the jury. The concern expressed by Makekau was the potential that people may infer abuse from the foster family situation because one of the reasons children are placed in foster care is abuse in the household. Makekau did not object to Juror 7 on the ground that Juror 7's husband's cousin worked for the prosecutor's office. The court denied Makekau's request to excuse the juror for cause. In support of its ruling the circuit court stated:
The juror's indicated that the only thing that she was aware of was that [Minor] and his brother were  that foster checks were being issued and the only circumstances that she was aware of was that it's based on financial circumstances. There's nothing to indicate this speculation that there's abuse involved or anything else.
Juror 7 advised the circuit court that she had not discussed the things she disclosed to the court with any of the other jurors. The circuit court instructed Juror 7 to refrain from discussing the matters she disclosed with any other juror during deliberations; to put those matters out of her mind and not consider them in deciding the case; and to decide the case solely on the evidence presented in the courtroom. Juror 7 agreed to follow the court's instructions and affirmed that she was certain she could do so. During the course of the court's instructions, Juror 7 stated that she had remembered seeing the names of Minor and his brother when she got up that morning. She also stated that she was not sure whether Minor and his brother were in foster care or whether her recall of the names was accurate.
THE COURT: [Juror 7] is just doing it based upon the recall of the names and isn't even sure that she's correct. Is that correct?
[Juror 7]: Mmm-hmm.
THE COURT: She's not even sure these are the correct names, so what the Court is telling her is she needs to put that out of her mind and not even worry whether they were or they were not.
[Juror 7]: If English name [Minor's English name], I cannot tell, but [Minor's Hawaiian name] something, that's why it come up to my head, a special name.
THE COURT: So you are not even sure at this point?
[Juror 7]: No
After instructing Juror 7, the circuit court made the following finding:
The Court will just make the final finding that  the Court concludes, based upon the questioning of the juror, that [Juror 7] will be fair and impartial and that this juror can fairly and impartially decide this case.

DISCUSSION

I.

A.
Makekau argues that Juror 7's failure to disclose during jury selection that she had come across the names of Minor and his brother in processing foster care benefit claims and that her husband's cousin worked for the prosecutor's office violated his right to a fair and impartial jury because it deprived him of his right to exercise a peremptory challenge during jury selection. We disagree.
In general, "proof that a juror was biased against the defendant or lied on voir dire to the defendant's prejudice entitles the defendant to a new trial." State v. Furutani, 76 Hawai`i 172, 181, 873 P.2d 51, 60 (1994) (brackets omitted). Not every failure of a potential juror to respond accurately to questions during voir dire, however, entitles a defendant to a new trial. Id. "[T]he defendant must meet the threshold burden of a prima facie showing that the failure rises to the level of being substantially prejudicial." Id. (internal quotation marks omitted).
In Furutani, the Hawai`i Supreme Court adopted the standard enunciated by the Colorado Supreme Court in People v. Dunoyair, 660 P.2d 890 (Colo. 1983), for determining whether a potential juror's non-disclosure of information during jury voir dire warranted a new trial. Furutani, 76 Hawaii at 181-82, 873 P.2d at 60-61. The Hawaii Supreme Court stated:
In our opinion, the common thread unifying the standards set forth above is enunciated most clearly by the Colorado Supreme Court in the following manner, which we now adopt as the law of this state:
Under some circumstances a juror's nondisclosure of information during jury selection may be grounds for a new trial. Where, for example, a juror deliberately misrepresents important biographical information relevant to a challenge for cause or a peremptory challenge or knowingly conceals a bias or hostility towards the defendant, a new trial might well be necessary. In such instances the juror's deliberate misrepresentation or knowing concealment is itself evidence that the juror was likely incapable of rendering a fair and impartial verdict in the matter.
People v. Dunoyair, 660 P.2d 890, 895 (Colo.1983) (citations omitted). On the other hand, we agree with the Colorado Supreme Court that proof of a juror's "inadvertent" nondisclosure of information "of only peripheral significance" fails to meet the defendant's prima facie burden of demonstrating presumptive prejudice. Id. (citations omitted).
Id. at 181-82, 873 P.2d at 60-61.

B.
Upon receiving notice that Juror 7 may have processed foster care payments for Minor and his brother, the circuit court promptly held a hearing to determine the underlying facts. The court as well as counsel engaged Juror 7 in an extensive inquiry regarding the new information disclosed by Juror 7 to determine whether the disclosures affected her ability to be fair and impartial. The record fully supports the circuit court's finding, upon completion of the hearing, that Juror 7 "will be fair and impartial and that this juror can fairly and impartially decide this case." See State v. Nupeiset, 90 Hawai`i 175, 178-79, 977 P.2d 183, 186-87 (App. 1999) (concluding that "the trial judge . . is in a better position than the appellate court to ascertain from the answers of a juror whether the juror is able to be fair and imparial"). We conclude that Makekau did not meet his burden of making a prima facie showing that Juror 7's nondisclosures during jury rvoir dire substantially prejudiced his right to an impartial jury. Accordingly, the trial court properly denied Makekau's request to remove Juror 7 and did not err in failing to declare a mistrial.
The record reflects that Juror 7 inadvertently failed to disclose during jury selection that she had come across the names of Minor and his brother in processing foster care benefit claims. Minor's English first name was read during jury selection whereas Juror 7 indicated that she recognized Minor because of his Hawaiian first name, which was revealed when Minor testified at trial. Juror 7 indicated that she made her disclosure as soon as she drew a connection between the names of Minor and his brother and her processing of foster care benefit claims. Juror 7 also stated that she was not sure her recollection of the names was accurate. The fact that Juror 7 on her own volunteered the information concerning her recollection of the names of Minor and his brother to the circuit court demonstrates that she did not deliberately withhold the information during jury selection.
In addition, Juror 7's recognition of the names of Minor and his brother was information "of only peripheral significance" to the issues presented at trial. Furutani, 76 Hawaii at 182, 873 P.2d at 61. As the Colorado Supreme Court stated in Dunoyair, 660 P.2d at 895-96:
There is no reason to presume that a juror's sudden realization that he [or she] is acquainted with a prosecution witness will so impair the juror's ability to follow the court's instruction as to undermine the juror's impartiality in the deliberative process.
Juror 7 stated that she had never met Minor or his family, that she was not aware of any background information regarding the family, and that the matters she had disclosed would not in any way affect her deliberations. The circuit court also instructed the juror to put aside the matters she had disclosed, to not mention them to the other jurors, and to decide the case solely on the evidence presented at trial.
Makekau did not argue to the circuit court that Juror 7 should be removed on the ground that her husband's cousin worked for the prosecutor's officer. He thus waived the right to raise the alleged bias arising out of this relationship as a basis for vacating his convictions on appeal. See State v. Ildefonso, 72 Haw. 573, 584, 827 P.2d 648, 655 (1992) (stating that arguments not raised at trial are deemed to have been waived); State v. Hoglund, 71 Haw. 147, 150-51, 785 P.2d 1311, 1313 (1990).
In any event, the record demonstrates that Juror 7's non disclosure during jury selection that her husband's cousin worked for the prosecutor's office was inadvertent and that this information was of peripheral significance. The question asked of the prospective jurors was whether they had "any relatives or close friends who are employed by a law enforcement agency," which the circuit court defined to include the prosecutor's office. It is not clear that a juror would necessarily consider her husband's cousin to be her "relative." Juror 7 explained that she did not know her husband's cousin, with whom she had minimal contact, and thus "wasn't thinking anything" during jury selection. Juror 7 assured the circuit court that the fact that her husband's cousin worked at the prosecutor's office would not make her favor one side over the other or affect her ability to be fair and impartial. Makekau was apparently satisfied with the court's inquiry and Juror 7's responses. Makekau did not seek to ask any follow-up questions or raise the fact that Juror 7's husband's cousin was employed by the prosecutor's office as a ground for Juror 7's removal.
Under the circumstances presented in this case, Makekau did not make a prima facie showing that Juror 7's non-disclosures during jury selection were substantially prejudicial to Makekau. Furutani, 76 Hawai`i at 181-82, 873 P.2d at 60-61; see McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984) (holding that a juror's non disclosure of information in response to questions during jury selection does not entitle a party to a new trial unless the party shows that a correct response would have provided a valid basis to challenge the juror for cause) The circuit court did not err in refusing to remove Juror 7.

II.
The circuit court properly denied Makekau's motions for judgment of acquittal as there was sufficient evidence to support Makekau's convictions. In particular, Minor's testimony provided substantial evidence to support Makekau's convictions. See State v. Eastman, 81 Hawai`i 131, 141, 913 P.2d 57, 67 (1996) (noting that the testimony of a single witness can establish sufficient evidence to support a conviction). Minor testified that Makekau had subjected him to repeated acts of sexual assault, including penile penetration of Minor's mouth and on one occasion penile penetration of Minor's anus, from the time Minor was ten years old until he was fourteen years old. Minor described Makekau as having used Minor as a "sex toy." Minor's testimony was somewhat corroborated by his mother and grandmother, who noticed that Minor no longer wanted to associate with Makekau and underwent behavioral changes around the time that Minor alleged Makekau began abusing Minor.
We reject Makekau's claim that the evidence was insufficient because there was no scientific or eye-witness evidence to corroborate Minor's allegations of sexual assault and because Minor had a motive to falsely accuse Makekau. It is well settled that in reviewing the sufficiency of the evidence, appellate courts will give due deference to the right of the trier of fact to determine the credibility of the witnesses and to weigh the evidence. State v. Smith, 106 Hawai'i 365, 372, 105 P.3d 242, 249 (App. 2004) ("It is the province of the jury, not the appellate courts, to determine the credibility of witnesses and the weight of the evidence."). When viewed in the light most favorable to the prosecution, there was substantial evidence to support Makekau's convictions. See State v. Tamura, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981).

CONCLUSION
We affirm the October 26, 2005, Judgment of the circuit court. We also affirm the Amended Mittimus issued by the circuit court on January 20, 2006, and the order denying Makekau's motion for bail pending appeal filed by the circuit court on January 27, 2006.
NOTES
[1] The Honorable Richard W. Pollack presided.
[2] During the time of the offense alleged in Count 1 of the indictment, Hawai`i Revised Statutes (HRS) § 707-730(1)(b) (1993) provided in relevant part:

(1) A person commits the offense of sexual assault in the first degree if:
...
(b) The person knowingly subjects to sexual penetration another person who is less than fourteen years old[.]
Count 2 alleged a violation of HRS § 707-732(1)(b) (1993), which provides:
(1) A person commits the offense of sexual assault in the third degree if:
...
(b) The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]
Count 3 alleged a violation of HRS § 707-730(1)(b) (Supp. 2006), which provides:
(1) A person commits the offense of sexual assault in the first degree if:
...
(b) The person knowingly engages in sexual penetration with another person who is less than fourteen years old[.]
Counts 4 and 5 alleged violations of HRS § 707-730(1)(c) (Supp. 2006), which provides:
(1) A person commits the offense of sexual assault in the first degree if:
...
(c) The person knowingly engages in sexual penetration with a person who is at least fourteen years old but less than sixteen years old; provided that:
(i) The person is not less than five years older than the minor; and
(ii) The person is not legally married to the minor.
Count 6 alleged a violation of HRS § 707-732(1)(c) (Supp. 2006) which provides:
(1) A person commits the offense of sexual assault in the third degree if:
...
(c) The person knowingly engages in sexual contact with a person who is at least fourteen years old but less than sixteen years old or causes the minor to have sexual contact with the person; provided that:
(i) The person is not less than five years older than the minor; and
(ii) The person is not legally married to the minor[.]
[3] Defendant-Appellant Craige K. Makekau (Makekau) filed two notices of appeal in this case. The first notice of appeal reflected an appeal from the October 26, 2005, Judgment entered by the Circuit Court of the First Circuit (circuit court) and was assigned Appeal No. 27622. The circuit court subsequently entered an Amended Mittimus and an order denying Makekau's motion for bail pending appeal ("Order Denying Bail"). Makekau filed a second notice of appeal reflecting his appeal from the Amended Mittimus and the Order Denying Bail which was assigned Appeal No. 27744. The two appeals were consolidated under Appeal No. 27622. Makekau could have moved in the appellate courts for bail pending appeal pursuant to Hawai`i Rules of Appellate Procedure (HRAP) Rule 9(b), but he did not. Makekau also did not raise any point of error in his brief concerning the circuit court's Order Denying Bail or the Amended Mittimus, and thus he waived any claim regarding these matters. See HRAP Rules 28(b)(4) and (7).
[4] As an example, the Hawaiian equivalent to the English name "John" would be "Keoni."